**TRUCK DRIVERS & HELPERS UNION, LOCAL NO. 170, Petitioner,**

**v.**

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

Girardi Distributors, Inc., Intervenor.

No. 92–1993.

United States Court of Appeals, First Circuit.

Heard Feb. 2, 1993.

Decided May 26, 1993.

Randall E. Nash, with whom Grady and Dwyer, was on brief, for petitioner.

Robert J. Englehart, Atty., with whom Jerry M. Hunter, Gen. Counsel, Yvonne T. Dixon, Acting Deputy Gen. Counsel, Nicholas E. Karatinos, Acting Associate Gen. Counsel, Aileen A. Armstrong, Deputy Associate Gen. Counsel, and Linda Dreeben, Supervisory Atty., N.L.R.B., were on brief, for respondent.

Henry F. Telfeian, with whom Keck, Mahin & Cate, was on brief, for intervenor.

Before TORRUELLA, CYR and STAHL, Circuit Judges.

TORRUELLA, Circuit Judge.

In this case we review a decision and order of the National Labor Relations Board (the "Board"). The General Counsel of the Board brought an unfair labor practice complaint against an employer based on three charges that it had previously dismissed. The facts underlying these charges occurred more than six months prior to the filing of the formal complaint by the General Counsel. The Board dismissed the complaint as barred by the six-month statute of limitations prescribed by section 10(b) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(b). In addition, the Board rejected the General Counsel's alternative effort to resuscitate these dismissed charges, finding amendment to a timely charge improper since the charges were not "closely related." We affirm the first decision, but reverse the latter.

## I

### BACKGROUND

The Union represents certain employees of Girardi Distributors, Inc. (the "Company"), a liquor distributor that operates several distribution facilities in northwestern Massachusetts. Over the years, the employees and the Company entered into collective bargaining agreements, the most recent of which covered from 1986 to May 19, 1989. In April of 1989, the Union and the Company began negotiations for a new agreement.

The negotiations did not progress well. On May 19, 1989, the Union filed its first unfair labor practice charge (case 1–CA–26394), alleging violation of §§ 8(a)(1), (3), & (5) of the NLRA, 29 U.S.C. § 158(a)(1), (3), & (5).[1] The General Counsel of the Board

---

1. Section 8(a)(1) makes it an unfair labor prac- tice for an employer to "interfere, restrain or

dismissed the charge through the Office of the Regional Director on July 19, 1989. Addressing the main thrust of the charge, the Regional Director refused to bring a complaint because, in its view, the investigation did not reveal sufficient evidence of bad faith bargaining. Negotiations between the Company and the Union continued during the Regional Director's investigation. As a result of the investigation, the charges were dismissed and the Union did not appeal the dismissal.

The Union remained dissatisfied with the negotiations and felt certain that the Company sought to bust the Union. In June, the Company made its "last, best, and final offer," which significantly undercut the wages and benefits received by the members of the bargaining unit under the 1986–89 labor agreement. Despite the final offer, the parties continued to hold bargaining sessions. The Union filed its second charge (case 1–CA–26561) on August 4, 1989, alleging the same statutory violations but providing more factual support for the bad faith bargaining claim. The Regional Director again dismissed the charges and the General Counsel's National Office of Appeal upheld the dismissal.

On September 8, 1989, the Union filed its third charge (case 1–CA–26660, which was amended several times) on the same general grounds with further factual support. Certain statements made by management, which were held improper under § 8(a)(1), were the subject of an informal settlement agreement,[2] while the other charges were dismissed. The Union unsuccessfully appealed the dismissal of the other charges.

By the end of 1989, despite numerous negotiation sessions, the Union and the Company had not reached an agreement. After the Union lost its appeal on the third set of charges, the Company withdrew its final offer. On April 14, 1990, the Company purportedly subcontracted the bargaining unit work to Suburban Contract Carriers, Inc. ("Suburban"), terminated its union employees, and withdrew its recognition of the Union as the exclusive collective bargaining representative of the bargaining unit.

On April 16, 1990, the Union filed a fourth set of charges (case 1–CA–27243), alleging the Company violated § 8(a)(1) & (5) by refusing to supply the name of the subcontractor to the Union, and by unilaterally subcontracting the bargaining unit work. Finally, the General Counsel filed a complaint and set the hearing date for November 19, 1990.

On the morning of the hearing, the General Counsel received new testimony from the principals of Suburban, David Murphy and Peter DeVito. The proceedings were adjourned with the consent of the parties. Based on the testimony of Murphy and DeVito, the Regional Director further investigated the Union's charges and procured testimony from Kenneth White, the Company's former operations manager, and Daniel Maroni, another employee close to management, which was damaging to the Company.

In March of 1991, the Regional Director issued a Consolidated Complaint, which revived the three charges dismissed in 1989 (cases 1–CA–26394, 1–CA–26561, 1–CA–26660), and an Amended Complaint, which amended case 1–CA–27243. The Consolidated Complaint alleged that the Company had

---

coerce employees" in the exercise of their section 7 rights to engage in "concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. §§ 157, 158(a)(1).

Section 8(a)(3) makes it an unfair labor practice for an employer "to encourage or discourage membership in any labor organization" by "discrimination in regard to hire or tenure." *Id.* § 158(a)(3).

Section 8(a)(5) requires that an employer "bargain collectively with the representatives of his employees" and to do so in good faith. *See id.* § 158(a)(5); *NLRB v. Insurance Agents' Int'l Union*, 361 U.S. 477, 498, 80 S.Ct. 419, 432, 4 L.Ed.2d 454 (1960).

**2.** The Regional Director approved the unilateral informal settlement on February 22, 1990. The Company complied with the settlement's posting requirement. The case, however, was never closed because of the pendency of a fourth set of charges (case 1–CA–27243) filed in April of 1990. The Regional Director vacated and set aside the settlement agreement when it issued the Consolidated Complaint that sought to reinstate the three charges dismissed in 1989. The Union's second basis for avoiding the statute of limitations pertains to this settlement agreement and is discussed *infra*.

engaged in bad faith bargaining from April through September of 1989 and had unlawfully implemented its final offer.. The Amended Complaint charged that failure to provide the name of the subcontractor and withdrawal of recognition of the Union violated sections 8(a)(1) & (5), and that subcontracting the bargaining unit's work to a subcontractor that was the alter ego of the Company and discharging the Union employees violated sections 8(a)(1) & (3).

With respect to the Amended Complaint, the Administrative Law Judge ("ALJ") found that the Company had violated the NLRA and ordered the Company to cease and desist from subcontracting the bargaining unit work anew, to recognize the Union, and to restore the status quo in existence before the false subcontractor was engaged. With respect to the Consolidated Complaint, the ALJ found that the General Counsel had stated a prima facie case that the Company had bargained in bad faith, that impasse had not been reached, and that implementation of the final offer was unlawful. Nevertheless, the ALJ dismissed the Consolidated Complaint because under § 10(b) the charges dismissed in 1989 could not be reinstated more than six months after the acts underlying those charges had occurred. The ALJ found that the General Counsel did not satisfy the fraudulent concealment exception to the statute of limitations because it failed to demonstrate that facts had been fraudulently concealed, and because the Union and the General Counsel did not exercise due diligence in discovering the factual basis for the charges. The Board affirmed and adopted the decision and order of the ALJ.

The Union appeals the dismissal of the Consolidated Complaint. The dismissed charges warrant reinstatement, according to the Union, because the Company fraudulently concealed the operative facts supporting the charges through affirmative acts of concealment and by a "self-concealing" scheme, and because the Union and the General Counsel exercised due diligence to uncover the evidence. Alternatively, the Union as-

serts that the dismissed § 8(a)(3) and (5) allegations were "closely related" to the § 8(a)(1) charges in the informal settlement agreement reached in case 1–CA–26660. As the agreement was later set aside by the Regional Director, the § 8(a)(3) and 8(a)(5) charges in the Consolidated Complaint may be reinstated by amendment to the now timely § 8(a)(1) charge.

## II

■ Section 10(b) of the NLRA prescribes a six-month statute of limitations for the filing of unfair labor practice charges.[3] In *Ducane Heating Corp.*, 273 N.L.R.B. 1389 (1985), *enforced without opinion*, 785 F.2d 304 (4th Cir.1986), the Board extended the breadth of § 10(b) to prohibit the reinstatement of dismissed charges outside the six-month period. The Board also held that the limitations period is tolled when "a respondent fraudulently conceals the operative facts underlying the alleged violation." *Ducane Heating*, 273 N.L.R.B. at 1390. The period will begin to run anew when "the charging party knows or should have known of the concealed facts." *Id.* In effect, the Board borrowed the federal doctrine of fraudulent concealment, which is an "equitable doctrine read into every federal statute of limitations." *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946); *O'Neill, Ltd.*, 288 N.L.R.B. 1354, 1988 WL 214303 at *57.

■ While the language of § 10(b) does not apply on its face to the reinstatement of dismissed charges, the Board is free to fill a "gap" left in the statute by applying § 10(b) to dismissed charges and by fashioning its own rule of fraudulent concealment to toll the statute of limitations. *Chevron USA, Inc., v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984). Traditionally the Board has been accorded "deference with regard to its interpretation of the NLRA as long as its interpretation is rational and consistent with the statute." *NLRB v. United Food & Commercial Workers Union, Local*

---

**3.** "[N]o complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made...." 29 U.S.C. § 160(b).

*23*, 484 U.S. 112, 123, 108 S.Ct. 413, 416, 98 L.Ed.2d 429 (1987). The Court of Appeals for the District of Columbia found the application of § 10(b) to dismissed charges to be reasonable and consistent with the underlying policy of the statute in *District Lodge 64, Int'l Ass'n of Machinists and Aerospace Workers v. NLRB*, 949 F.2d 441, 445 (D.C.Cir.1991). We agree with that determination. In the absence of a clear statement from Congress on the application of the fraudulent concealment tolling doctrine in the § 10(b) context, we must defer to the Board's reasonable interpretation. *Chevron*, 467 U.S. at 843–44, 104 S.Ct. at 2781–83. We turn now to the Board's formulation of its interpretation and to whether it is permissible.

The Board's reluctance to delimit the precise contours of the fraudulent concealment doctrine as applied to § 10(b) has been a matter of some frustration for the federal courts. *See NLRB v. O'Neill*, 965 F.2d 1522, 1527 (9th Cir.1992); *District Lodge 64*, 949 F.2d at 449 (remanding fraudulent concealment issue because court was "unable to make enough sense of the Board's opinion to justify affirmance"). In this case, the Board, adopting the ALJ's reasoning and conclusions, purported to rely on the general federal fraudulent concealment doctrine as explained by an earlier Board decision, *O'Neill, Ltd.*, 288 N.L.R.B. 1354 (1988), and by the Court of Appeals for the District of Columbia in *Hobson v. Wilson*, 737 F.2d 1, 33–36 (D.C.Cir.1984), *cert. denied sub. nom., Brennan v. Hobson*, 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985). Nevertheless, the Board appears to have adopted a rule that is different from the one upon which it claims to rely.

In *Hobson*, the Court of Appeals for the District of Columbia recognized two means by which fraudulent concealment can occur— by affirmative acts of concealment or by a "self-concealing" wrong or scheme. The *Hobson* court held that a plaintiff may establish a self-concealing wrong by demonstrating that the defendant "engage[d] in some misleading, deceptive or otherwise contrived action or scheme, *in the course of committing the wrong*, that is designed to mask the existence of a cause of action." *Hobson*, 737 F.2d at 34–35. The court announced a broad and inclusive understanding of self-concealing wrongs, stating that "[t]he deception may be as simple as a single lie or as complex as [a scheme], so long as the defendants conceal 'not only their involvement, but the very conduct itself.' " *Id.* at 34–35 (citation omitted).

Based on *Hobson* and its belief that *O'Neill, Ltd.* adopted *Hobson*'s reasoning, the Union contends that it has demonstrated fraudulent concealment and that the statute of limitations was tolled. The Union's argument proceeds roughly as follows: Normally, in the course of negotiation each party at a bargaining session attempts to force the other side to accept concessions. The NLRA requires that the parties meet and bargain in good faith, but does not require that they reach agreement. *See NLRB v. Insurance Agents' Int'l Union*, 361 U.S. 477, 490–01, 80 S.Ct. 419, 427–34, 4 L.Ed.2d 454 (1960); *Soule Glass & Glazing Co. v. NLRB*, 652 F.2d 1055, 1103 (1st Cir.1981) ("Adamant insistence on a bargaining position . . . is not in itself a refusal to bargain in good faith.") (citation omitted). Therefore, in the average "surface" bargaining case (bargaining without the intent to reach an agreement) the central issue is motive. As the Union perceives the issue, the deception committed by the Company was misrepresenting bad faith or surface bargaining as good faith bargaining. The self-concealing wrongs were the statements to the Board that the Company honestly put forward negotiating positions with a good faith bargaining intent. In the Union's view, the Company prevented the Union from discovering the cause of action, despite the Union's due diligence, by fraudulently concealing the operative fact—its bad faith. In effect, the Union argues that tolling continues as long as the concealment has so impaired its case that it is unable to furnish to the General Counsel with, or the General Counsel cannot discover, sufficient evidence to file a formal complaint before the Board.

We fully understand the rationale supporting the Union's stance. In this case, the Union filed three separate charges alleging essentially the same grievance—that the

Company was surface bargaining and its true intent was to destroy the Union. These charges were dismissed on three separate occasions and twice on appeal. The General Counsel explained, in its memorandum in support of exceptions to the ALJ decision, that at the time the charges were dismissed, the Company's bargaining table conduct, the first and generally exclusive source of evidence, revealed no indications of bad faith. Indeed, the evidence showed that the parties were meeting and that various proposals were being discussed. Despite the Union's claims that the Company intended to destroy the Union, there was no concrete evidence of that intention. The General Counsel asserted, therefore, that it would not have brought the complaint because the extensive paper trail compiled by the Company indicated that it was bargaining in good faith while at the table. The General Counsel denied that it knew all the facts subsequently considered by the ALJ to support a prima facie case of surface bargaining. Nonetheless, the General Counsel stated that even if it had known the facts, it would not have brought a complaint given the Company's conduct during discussions at the bargaining table.

█ Consequently, from the Union's perspective, the conduct at the table and the position statements submitted to the Regional Director defending against the charges, which were designed to deceive the Union and the General Counsel, were sufficient to conceal the cause of action and therefore toll the statue of limitations under the self-concealing wrong theory. The cause of action was concealed because the General Counsel would not bring the complaint without direct evidence of illegal intent if the bargaining table conduct at least superficially appeared

to be in good faith. Furthermore, because the General Counsel's dismissal of the charges is unappealable,[4] whether a cause of action is concealed must be decided according to its criteria.

While it quoted from *Hobson*, the ALJ's decision did not rely on *Hobson*'s statement of the "self-concealing wrong" theory. The ALJ stated that the Board had never found fraudulent concealment without some affirmative act, even if it was simply affirmative verbal misrepresentation. *Girardi Distributors, Inc.*, 307 N.L.R.B. No. 236, 1992 WL 183679 at *38 n. 24 (citing *Brown & Sharpe Mfg.*, 299 N.L.R.B. No. 89 (1990); *Kanakis Co.*, 293 N.L.R.B. No. 50 (1989); *Strawsine Mfg.*, 280 N.L.R.B. 553 (1986); *Garrett Railroad Car & Equipment, Inc.*, 275 N.L.R.B. 1032 (1985)). The ALJ specifically noted that the Board's decision in *O'Neill, Ltd.*, which also quoted extensively from *Hobson*, did not turn on *Hobson*'s expansive definition of what sort of self-concealing wrong could be considered fraudulent concealment sufficient to toll the statute of limitations. The ALJ read *O'Neill, Ltd.* to require a showing that "there were affirmative misrepresentations made (exculpatory statements aside) with respect to the dismissed charges," *and* that there was a self-concealing scheme in place (as opposed to a single lie). *Girardi Distrib.*, 1992 WL 183679 at *29 (citing *O'Neill, Ltd.*, 288 N.L.R.B. at 1355). Under this formulation, there must be an affirmative misrepresentation other than telling the General Counsel and the charging party that the accused is not engaged in surface bargaining and supplying rational excuses for the accused's conduct at the bargaining table. *See id.* at *38 n. 23.[5]

---

**4.** Procedurally, the charging party files a complaint with the Regional Director and if the Regional Director decides to dismiss the charge its decision may be appealed only to the General Counsel, not to the Board or the courts. Consequently, the General Counsel's decision to dismiss is final. *See United Food & Commercial Workers Union*, 484 U.S. at 118–19 & nn. 8 & 10, 108 S.Ct. at 416 & nn. 8 & 10. We note the force of the Union's analogy to the rule that a party who commits a "fraud on the court" should not expect the benefits of repose bestowed by the statute of limitations. *See Hazel–Atlas*

*Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944).

**5.** The ALJ relied on the Board's statement in *O'Neill, Ltd.* that "the mere fact that a party makes exculpatory representations does not, by itself, constitute fraudulent concealment or serve to toll the § 10(b) period." 288 N.L.R.B. 1353, n. 10 (1988) (citing *Al Bryant, Inc.*, 260 N.L.R.B. 128, 133–35 (1982)).

We note that we find this rule rather peculiar because we can think of no reason to distinguish "exculpatory" statements to the Board designed to avoid a formal complaint from any other lie

The ALJ's conception of the scheme necessary seems rather great indeed; he appeared to require a showing of "some master plan of contingencies that would be triggered by unfolding events." *Id.* at *29.

[6, 7] We agree with the ALJ that, to the extent *O'Neill, Ltd.* discusses the more relaxed standard of self-concealing wrongs explained in *Hobson,* those statements are only dicta. *O'Neill, Ltd.* did not announce the rule upon which the Union now urges that we rely.[6] It is impossible to say what deceptive actions, short of proof of a complicated scheme replete with contingency plans to get rid of the Union, would satisfy the Board. It is clear, however, that the deception that the Board now requires is significantly more than the "single lie" which the *Hobson* court rule would accept.

Irrespective of the extent of the effort to conceal, the fraudulent concealment doctrine will not save a charging party who fails to exercise due diligence, and is thus charged with notice of a potential claim. *Girardi Distrib.,* at *28–29; *Hobson,* 737 F.2d at 35.[7] Normally, when the party seeking to toll the statute by fraudulent concealment alleges affirmative acts of concealment, the burden of showing due diligence falls on that party. *Morales v. Rosa Viera,* 815 F.2d 2, 5 (1st Cir.1987). The opposite rule applies, however, when the charging party alleges that the statute is tolled by a self-concealing wrong, in which case the defendant bears the burden. *Hobson,* 737 F.2d at 35. Thus, "[w]hen tolling is proper because the defendants have concealed the very cause of action, . . . they have the burden of coming forward with any facts showing that the plaintiff could have discovered . . . the cause of action if he had exercised due diligence." *Id.* (quoting *Richards v. Mileski,* 662 F.2d

65, 71 (D.C.Cir.1981)). In another significant departure from the *Hobson* decision, the Board here placed the burden of proving the exercise of due diligence in discovering the fraud on the party seeking to toll the statute of limitations. The significance of which party bears the burden of proof on due diligence is palpable in this case because, in large measure, the Board's decision turned on the utter absence of evidence of due diligence by the Union and the General Counsel. Nevertheless, because courts apportion this burden differently, *compare Hobson,* 737 F.2d at 35 (placing burden on party seeking shelter of statute of limitations in self-concealing wrong case) *with NLRB v. O'Neill,* 965 F.2d 1522, 1527 (9th Cir.1992) (placing burden on party seeking to toll statute of limitations in self-concealing scheme case), we cannot say that the Board's decision is unreasonable and therefore must defer to it. *Chevron,* 467 U.S. at 843–44, 104 S.Ct. at 2781–83.

Having established the legal tests governing the Board's decision, we turn to the Board's findings of fact. We must accept the Board's factual findings if they are supported by substantial evidence on the record when considered as a whole. 29 U.S.C. § 160(f); *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951). In this case, the Board adopted the ALJ's findings and conclusions. The ALJ found that the Company did not fraudulently conceal by affirmative actions the operative facts underlying the dismissed charges. The ALJ exhaustively reviewed the evidence and found that the General Counsel had made a prima facie case of bad faith or surface bargaining based on (1) evidence of the Company's generalized intent to bust the

that a party may proffer to avoid sanctions for unfair labor practices.

**6.** We note parenthetically that the Board would probably be able to develop a new rule, or narrow a present one, without offending decisions limiting an agency's authority to apply such rules retroactively. *See Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971); *District Lodge 64,* 949 F.2d at 446–48. The absence of a clear rule would negate any claim of reasonable reliance, which is necessary for a

finding that application of the new rule would cause "substantial inequitable results." *See District Lodge 64,* 949 F.2d at 448.

**7.** The party seeking the shelter of the § 10(b) affirmative defense bears the burden of proving "clear and unequivocal notice—either actual or constructive—of the acts that constitute the alleged unfair labor practice." *John Morrell & Co.,* 304 N.L.R.B. No. 116, 1991 WL 181868 at *5; *Pennsylvania Energy Corp.,* 274 N.L.R.B. 1153, 1155 (1985).

Union;[8] (2) the discrepancy between wage proposals for union workers and the wages paid to nonunion workers at other Company facilities; (3) the solicitation of replacement workers early in the bargaining process; (4) the expressed belief that the proposals would provoke a strike; and (5) the statements of operations manager, Ken White, indicating that better wages and benefits would be provided if the employees renounced the Union. The ALJ therefore concluded that the operative facts could not have been fraudulently concealed because the Union and the General Counsel knew the facts supporting the prima face case when the dismissed charges were originally filed by the Union. Finally, the ALJ determined that the dismissed charges could not be reinstated because the Union and the General Counsel had offered no evidence that they had exercised due diligence to uncover the alleged fraud.

Given the narrow scope of the fraudulent concealment doctrine in the § 10(b) context, we cannot conclude that the Board's findings of fact and conclusions are unsupported by substantial evidence in the record. Consequently, they must stand. The strength of the Union's argument proceeded from the evidence of intent garnered from statements made by former insiders not available to the General Counsel or the Union at the time the charges originally were filed. The Board was not swayed; it explicitly held that the new evidence did not alter its calculus.

Clearly there is an incongruity between what the Board and the General Counsel find sufficient to state a claim of surface bargaining. The Board's prima facie case, and hence its finding of notice, rests on facts which it holds constitute constructive, as opposed to actual, evidence of bad faith or intent. The ALJ asserted that a surface bargaining case must be made on the basis of the "totality of respondent's observable conduct." *Girardi Distrib.* at *29. In contrast, the General Counsel contended in this case that it normally would not bring a formal unfair labor practice complaint, irrespective of the surrounding circumstances, in cases in which the bargaining table conduct appeared to be in good faith. The ALJ specifically rejected the General Counsel's suggestion to follow the *Hobson* court's statement of fraudulent concealment, stating, "[i]f I agreed with the position of the General Counsel, virtually every surface bargaining case would be potentially exempt from the strictures of section 10(b), needing only some newly discovered evidence of intent to surface." *Id.*

This incongruity places the charging party in a difficult position. A charging party cannot get the General Counsel to file a timely complaint if it only possesses circumstantial evidence supporting a finding of bad faith. On the other hand, its timely charges that the General Counsel unappealably dismissed will not be reinstated if the General Counsel later finds direct evidence of bad motive because the Board construes evidence of constructive intent based on the totality of the circumstances as notice of the claim. That is what happened in this case.

 While we believe the Court of Appeals for the District of Columbia's construction of the fraudulent concealment doctrine urged by the General Counsel and the Union to be a better and more equitable rule for the victims of surface bargaining, the Board ultimately controls the terms of § 10(b) unless its interpretation is unreasonable. We may not supplant the Board's judgment since the Board reasonably adopted a less expansive fraudulent concealment doctrine that it viewed as more faithful to industrial relations policy favoring finality in the resolution of labor disputes. We note, however, that under the present formulation, the General Counsel will rarely demonstrate fraudulent concealment in surface bargaining cases. Therefore, instead of waiting for the smoking gun, the General Counsel should search diligently for circumstantial evidence of unlawful intent as understood by the Board to prevent sound unfair labor practice charges from being barred by the § 10(b) statute of limitations. Investigation should include interviewing senior bargaining repre-

8. The record evidence showed that the Union membership understood that the Company wanted to get rid of the Union. This general animus began after George Girardi, Jr. took over management of the Company from his father. As the Union notes, everyone was aware of this animus after 1985, and, despite this antipathy, the parties were able to reach an accord in 1986.

sentatives or company presidents concerning their intention to bargain in good faith and their union animus, if only to later assert misrepresentation that tolls the statute of limitations.[9]

## III

 We turn now to the Union's second argument to avoid the statute of limitations bar. The third set of charges dismissed in 1989 (case 1–CA–26660) involved several charges. It alleged, *inter alia*, violations of § 8(a)(5) for bad faith bargaining and § 8(a)(1) based on statements made by the Company's operations manager promising improved wages and working conditions if the workers renounced the Union.[10] All the charges except the § 8(a)(1) charge, were dismissed. The § 8(a)(1) charge was the subject of a unilateral informal settlement agreement approved by the Regional Director.[11] Because settlement agreements may be set aside if the provisions are breached or subsequent unfair labor practices are committed, *see Universal Blanchers, Inc.*, 275 N.L.R.B. 1544, 1545 (1985), the Regional Director did not close case 1–CA–26660. The Regional Director rescinded the settlement agreement and asserted that the Consolidated Complaint was "closely related" to the then-resurrected § 8(a)(1) charge, and therefore not time-barred.[12] The Union proffers this same argument on appeal.

In *Nickles Bakery of Indiana Inc.*, 296 N.L.R.B. 927 (1989), the Board summarized the closely related test established in *Redd I, Inc.*, 290 N.L.R.B. 1115 (1988):

First, the Board will look at whether otherwise untimely allegations involve the same legal theory as the allegations in the pending timely charge. Second, the Board will look at whether the otherwise untimely allegations arise from the same factual circumstances or sequence of events as the pending timely charge. Finally, the Board will look at whether a respondent would raise similar defenses to both allegations. *Nickles Bakery*, 296 N.L.R.B. at 928 (footnotes omitted). Applying this standard, the ALJ rejected the "closely related" argument. In addition, while the ALJ agreed that the informal settlement agreement could be set aside due to the charges pending in the Amended Complaint, he ultimately recommended that it be reinstated. The ALJ favored reinstatement because rescinding the agreement served no purpose in light of its other holding that the § 8(a)(1) allegations were not "closely related" to the § 8(a)(5) charges. *Girardi Distrib.* at *31–*33 & n. 30. The Board adopted the ALJ's recommendations and conclusions.

Appellee Company urges that we may not consider the "closely related" theory supporting reinstatement of dismissed charges. It reasons that because neither the General Counsel nor the Union raised objections to the reinstatement of the set aside settlement agreement, the Union has waived its right to do so now. *See* 29 U.S.C. § 160(e);[13] *Woelke & Romero Framing, Inc. v. NLRB*, 456 U.S. 645, 665, 102 S.Ct. 2071, 2082, 72 L.Ed.2d 398 (1982); *Detroit Edison Co. v. NLRB*, 440 U.S. 301, 311 & n. 10, 99 S.Ct. 1123, 1129 & n. 10, 59 L.Ed.2d 333 (1979). It follows, then, that since the settlement agree-

---

**9.** The General Counsel stated before the Board that such interviews would be fruitless because individuals do not admit to unfair labor practice violations.

**10.** *See supra* note 1.

**11.** The Company agreed to post the appropriate notice to remedy the infraction.

**12.** The six-month limitations period applies only "to the filing and service of the charge, not to the issuance or amendment of the complaint." *NLRB v. Overnite Transp. Co.*, 938 F.2d 815, 820 (7th Cir.1991); *accord Sonicraft, Inc. v. NLRB*, 905 F.2d 146, 148 (7th Cir.1990), *cert. denied*, 498 U.S. 1024, 111 S.Ct. 671, 112 L.Ed.2d 664 (1991). A complaint based on a timely filed

charge may be amended to include other allegations if they are "closely related" to the underlying timely charge and occurred within six months of the charge. *See Eastern Maine Medical Center v. NLRB*, 658 F.2d 1, 6 (1st Cir.1981); *see also NLRB v. Complas Indus., Inc.*, 714 F.2d 729, 734 (7th Cir.1983).

**13.** Judicial review is barred by § 10(e) of the Act, 29 U.S.C. § 160(e), which provides that "[n]o objection that has not been urged before the Board ... shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances."

ment disposing of the § 8(a)(1) charges has been reinstated, no timely charge exists to which the dismissed charges of the Consolidated Complaint can be "closely related."

It is true that the General Counsel did not object specifically to the reinstatement of the set aside settlement agreement before the Board.[14] The General Counsel objected strenuously, however, to the ALJ's decision that the § 8(a)(5) charges were not "closely related" to the § 8(a)(1) charges. We think that the exception taken on this ground challenged the recommendation to reinstate the set aside agreement with sufficient particularity to survive the rule waiving issues not timely raised. By attacking the ALJ's decision on the "closely related" issue, the General Counsel attacked the ALJ's rationale for reinstatement. Thus, the General Counsel implicitly objected to reinstatement of the set aside agreement. ·

■ We therefore consider whether the charges in the Consolidated Complaint were closely related to the § 8(a)(1) charge. While the ALJ found that none of the elements of the test had been met, his explanations were less than satisfactory. We examine each in turn.

The ALJ combined the "same legal theory" and "similar defense" components of the test, asserting that the legal theories behind each charge were "far different," but only illustrating the differences between the defenses that would be raised to each charge. The ALJ stated that the only defense to the § 8(a)(1) charge was that the statements had not been made. In contrast, a defense to the § 8(a)(5) charge would involve detailed explanations of each step taken by the Company throughout the negotiations and disintegration of the parties' relationship. The only connection that the ALJ could see between the two sets of charges was "their bearing on the issue of intent." *Girardi Distrib.* at *33.

With respect to the "same factual circumstances or sequence of events" element of the test, the ALJ imposed an extremely high burden regarding the required nexus. With-

out proof that the Company specifically directed the operations manager, Ken White, to make the § 8(a)(1) statements as part of a "scheme" to get rid of the Union, the ALJ rejected the assertion that the statements were part of the same factual situation or sequence of events. He concluded that the statements were "simply isolated statements reflecting the common knowledge of all [the Company's] employees that Mr. Girardi would like to get rid of the Union." *Id.* at *32.

■ We think that the ALJ's factual conclusions are not supported by substantial evidence in the record and that the ALJ misapplied the closely related test. With respect to the similarity between the legal theories underlying each charge, it is clear that the allegations need not be under the same statutory section. *See Redd I, Inc.*, 290 N.L.R.B. 1115; *NLRB v. Overnite Transp. Co.*, 938 F.2d 815, 821 n. 8 (7th Cir.1991). It is sufficient that both charges are part of the same effort or crusade against the union. *See, e.g., Overnite Transp. Co.*, 938 F.2d at 821; *Texas World Service Co. v. NLRB*, 928 F.2d 1426, 1437 (5th Cir.1991). In this case, the ALJ conceded that the § 8(a)(1) statements were probative of the Company's intent when dealing with the Union, which was the central issue for the bad faith bargaining charges under § 8(a)(5). It would seem then that the charges involved the same legal theory, broadly speaking.

■ We do not understand the ALJ's finding that the statements by White were just isolated statements confirming facts already known to the Union. As we stated earlier, the evidence did not support finding a detailed "scheme" with contingency plans. The factual nexus required under the closely related test, however, does not demand that General Counsel establish that sort of a conspiracy. Charges will be found closely related factually if they arise from the same "sequence of events." Earlier in his opinion, the ALJ found that after the bargaining unit members complained about the wage difference between the Company's union and non-

---

**14.** Nor did the Union, although it could have intervened in the appeal to the Board. *See* 29 U.S.C. § 160(f).

union employees, White, "acting on information given him by Mr. Girardi, advised the men they could have the benefits afforded the nonunion personnel if they decertified." *Girardi Distrib.* at \*26. Thus, despite the inconsistency in the ALJ's characterization of the impetus for the statements, it is clear that the Company directed White to make the antiunion statements in violation of § 8(a)(1). The ALJ also relied upon White's statements in determining that the prima facie case on surface bargaining existed. Finally, the evidence indicated that White played an important role in the campaign to bust the Union, even if the evidence did not support a finding that a detailed conspiracy existed by which the Union's ouster would be accomplished. Consequently, we think the facts underlying the two charges are factually "closely related."

██ The fact that the defenses to the § 8(a)(5) charges would be much more detailed and lengthy in their presentation, as the ALJ found, is not fatal to a finding that the charges are closely related. Taken as a whole, the closely related test seeks to ensure that the General Counsel does not amend a charge to include unrelated infractions of the NLRA. Each component of the test adds specificity to the inquiry. The "same defense" prong of the test is but another way to ferret out amendments which involve extraneous material. In defending against the § 8(a)(5) charge the Company would attempt to show that White's statements were not part of its effort to decertify the Union and that its efforts to bust the Union did not include surface bargaining. The overlap between the subject matter of the defenses is readily apparent. The Union, therefore, has met the "closely related" test and the merits of the charges in the Consolidated Complaint warrant consideration.

IV

We *affirm* the Board's holding with respect to the § 10(b) bar. We *reverse* the reinstatement of the set aside settlement agreement and *remand* for a hearing on the Consolidated Complaint having found those charges closely related to the timely § 8(a)(1) charges underlying the set aside agreement.