

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-3-2007

# Lancaster Nissan Inc v. NLRB

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1568

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Lancaster Nissan Inc v. NLRB" (2007). *2007 Decisions.* Paper 1371.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1371

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 05-1568 and 05-2077
_____

LANCASTER NISSAN, INC.,
Petitioner No. 05-1568

v.

NATIONAL LABOR RELATIONS BOARD,
Respondent

_____

NATIONAL LABOR RELATIONS BOARD,
Petitioner No. 05-2077

v.

LANCASTER NISSAN, INC.,
Respondent


_____

On Petition for Review and Petition for Enforcement
of a Decision and Order of the
National Labor Relations Board
(NLRB Nos. 4-ca-32498 and 4-ca-32862)
Administrative Law Judge: Jane Vandeventer

_____

Argued on January 30, 2007

Before: RENDELL, ROTH and GIBSON,* Circuit Judges,

(Filed : April 3, 2007)


_____

* Honorable John R. Gibson, Senior Judge of the United States Court of Appeals for
the Eighth Circuit, sitting by designation.

Amy G. Macinanti    **[ARGUED]**
Kegal, Kelin, Almy & Grimm
24 North Lime Street
Lancaster, PA 17602
*Counsel for Petitioner*
*Lancaster Nissan Inc.*

Aileen A. Armstrong
Julie B. Broido
Ruth E. Burdick
Fred B. Jacob    **[ARGUED]**
National Labor Relations Board
1099 14th Street, N.W.
Washington, DC  20570
*Counsel for Respondent*
*National Labor Relations Board*

_____

## OPINION OF THE COURT
_____

RENDELL, *Circuit Judge*.

Lancaster Nissan, Inc. ("Lancaster") petitions for review of the affirmance by the National Labor Relations Board ("Board") of the determination of the Administrative Law Judge ("ALJ") that Lancaster had refused to bargain with the District Lodge 98, International Association of Machinists and Aerospace Workers, AFL-CIO ("the Union"), in violation of Section 8(a)(5) and (1) of the National Labor Relations Act, as amended, 29 U.S.C. §§ 151, 160(a) ("the Act"). The Board has filed a cross-application for enforcement. We will deny the petition for review and grant enforcement.

Lancaster contends that the Board erred in finding that Lancaster had failed to meet for bargaining at reasonable times during the certification year. The Union was certified

2

as the exclusive collective bargaining representative of the automotive technicians at Lancaster in October 2002. At that time, Lancaster employed seven technicians and one part-time apprentice trainee.

We need not recount the detailed saga of negotiations and attempts at bargaining that took place over the next twelve months, but suffice it to say that they were characterized by repeated requests by the Union for dates for meetings; responses by Lancaster that limited dates to one or two per month; urging by the Union for more frequent and longer sessions; and restrictions placed both by the Union, as to who could be at the bargaining table, and by Lancaster, as to when bargaining could occur.

The Union required that two of the technicians, Neil Shirey and Steve Braun, be at the bargaining table. Lancaster refused to permit these technicians to attend the bargaining sessions during business hours, because their work was integral to Lancaster's operations and directly impacted its revenues. Therefore, bargaining had to occur at times other than normal business hours. The Lancaster management representatives at the table (initially John Seyfert, Lancaster's vice president, and thereafter Rob Allen Jr., general manager) refused to meet on the weekends and restricted the evenings that each was willing to be at the bargaining table. In the end, over the course of the certification year thirteen negotiating sessions had taken place, each less than three to four hours in length. During the negotiating sessions, Lancaster and the Union had arrived at agreement regarding certain aspects of an agreement, but negotiations had not take place at all with respect to many of the key issues, such as wages and healthcare benefits,.

Within one week after the expiration of the certification year, Lancaster withdrew

recognition of the Union based on a decertification petition signed by a majority of the unit employees. Thereafter, Lancaster unilaterally implemented new benefit programs for the technicians.

The Board found that Lancaster had violated Section 8(a)(5) and (1) of the Act by failing to meet with the Union at reasonable times for the purpose of collective bargaining; refusing to provide information that the Union requested by letter; unilaterally changing the employees' terms and conditions of employment in January 2004 without providing notice and opportunity to the Union to bargain; and withdrawing recognition from the Union on October 13, 2003. *Lancaster Nissan, Inc.*, 2005 NLRB LEXIS 21 (2005).

Lancaster conceded that if its failure to meet with the Union at reasonable times was unlawful, then the other three challenged actions were unlawful as well. The Board adopted the recommended order of the ALJ, who wrote a detailed opinion outlining the course of negotiations. *See Lancaster Nissan, Inc.*, 2004 NLRB LEXIS 607 (2004). The ALJ began her analysis by referring to several Board opinions in which it had characterized the duty to bargain and "reiterated the central importance of the obligation to meet for bargaining on many occasions." *Id*. at *10. In *J.H. Rutter-Rex Manufacturing Co.*, 1949 NLRB LEXIS 290 (1949), the Board characterized that duty as "affirmative duty to make expenditious [sic] and prompt arrangements, within reason, for meeting and conferring," noting that the party is to "display a degree of diligence and promptness in arranging for collective bargaining sessions when they are requested, and in the elimination of obstacles thereto, comparable to that which he would display in his other business affairs of importance." *Id*. at *107. Similarly, the ALJ noted the Board's

4

conclusion that the obligation to meet at reasonable times was something that should be "part of the regular business of an employer, not something to be fitted in at odd times, when no other demands on the employer's time were being made." (citing *John Ascuaga's Nugget*, 298 N.L.R.B. 524 (1990)). Moreover, "[c]onsiderations of personal convenience, including geographic or professional conflicts, do not take precedence over the statutory demand that the bargaining process take place with expedition and regularity." *Caribe Staple Co., Inc.*, 1993 NLRB LEXIS 1333 (1993).

In light of this standard, it is not surprising that the ALJ found Lancaster's performance to be deficient. The ALJ concluded that Lancaster's agreement to only one or two meetings per month and its frequent cancellation of scheduled meetings did not comport with the "obligation set forth by the Board to accord collective bargaining equal importance to other business affairs." 2004 NLRB LEXIS 607 at *16. Rather, the ALJ found that Lancaster "accorded collective bargaining the *lowest* priority of any activitiy [sic], whether business or personal, lower than all sales or service business matters, and lower even than personal days off and evenings off for managers." *Id.* The ALJ thereupon concluded: "This conduct clearly does *not* meet respondent's obligation to accord bargaining equal importance with other business matters." *Id.* at *17. The Board affirmed, with one Member, Schaumber, voicing concern over the Union's insistence on the presence at bargaining sessions of two employees from such a small bargaining unit, "thus requiring that bargaining sessions be limited to evenings and weekends, and when it failed to request bargaining during business hours on those days when at least one of these unit employees was available for bargaining." *Lancaster Nissan, Inc.*, 2005 NLRB LEXIS

21 at * 1 n.1. Schaumber felt the ALJ should have considered this fact and weighed it as part of her reasoning. However, Schaumber agreed that a violation had occurred, and that the evidence as a whole supported the ALJ's conclusion. *Id.*

Lancaster takes issue with the ALJ's reasoning, urging that it was not supported by substantial evidence. Specifically, it challenges the ALJ's statement that the parties met twelve times during the year, with meetings lasting only two to three hours. Lancaster counters that there were actually thirteen bargaining sessions over nine months, with each session lasting three to four hours. Lancaster also contends that progress had been made on many subjects, and that Lancaster had not afforded lower priority to bargaining but had merely had other obligations. Lancaster also contends that it invited the Union to meet during business hours, but that this invitation was declined.[1] Lancaster further attacks the ALJ's finding that it refused to allow the technicians unpaid time off from work for bargaining because Lancaster needed them to accomplish work. Lancaster also contends that the ALJ failed to consider Lancaster's overall conduct, in violation of the Board's own precedent setting forth this standard.

Our review of the Board's determination with respect to the scope of the duty to bargain is "quite circumscribed." *Latrobe Steel Co. v. NLRB*, 630 F.2d 171, 176 (3d Cir. 1980). Both our Circuit and the Supreme Court have noted the competence and experience of the Board in evaluating the bargaining process and making informed judgments with respect thereto. *See, e.g.*, *NLRB v. Ins. Agents' Intl Union*, 361 U.S. 477,

---

[1]The Union challenges this assertion and we can find no support for it in the record.

499, 505 (1960); *Saunders House v. NLRB*, 719 F.2d 683, 688 (3d Cir. 1983). Moreover, the Board's factual determinations and reasonable inferences to be drawn therefrom must be sustained if supported by substantial evidence. *Allegheny Ludlum v. NLRB*, 301 F.3d 167, 175 (3d Cir. 2002).

Given the Board's characterization of the duty to bargain, and given the deference we afford to the Board's determination in this regard, we are hard-pressed to grant Lancaster's petition for review. In its brief and oral presentation, Lancaster asserted that it did bargain, but that the Union's demand that the two technicians be at the bargaining table thwarted the process, and that Lancaster's overall conduct did not reflect a refusal to bargain. However, when the reasons given for the various cancellations and restrictions by Lancaster are analyzed, it cannot be said that Lancaster's overall conduct demonstrated that it was affording any priority whatsoever to the bargaining process. We will not disturb the ALJ's conclusion that other matters were allowed to take priority over bargaining; whether consciously or not, Lancaster was dragging its feet.[2]

We do take this opportunity to question the very aspect of this case that troubled Member Schaumber, namely, the insistence by the Union that two key employees be at the bargaining table. Such a requirement in and of itself thwarted the bargaining process because, for business reasons, the employer cannot spare these workers during business

---

[2] We note that failure to bargain does not require a specific intent or motivation. Lancaster was not charged with "surface bargaining," whereby a company would be accused of "going through the motions" and where motive is the central issue. *See Truck Drivers & Helpers Union, Local No. 170 v. NLRB*, 993 F.2d 990 (1st Cir. 1993) ("[I]n the average 'surface' bargaining case (bargaining without the intent to reach an agreement) the central issue is motive.").

hours. However, here, regardless of this requirement and regardless of the ALJ's failure to weigh it in the balance, we conclude that the determination by the ALJ and the Board that Lancaster had not engaged in reasonable bargaining was supported by substantial evidence.

We should note that we disagree with Lancaster's view that the Board did not follow its own decisions (specifically, *88 Transit Lines Inc.*, 300 N.L.R.B. 177 (1990) and *Wallace Theaters*, 33 N.L.R.B. 410 (2001)) in holding that Lancaster violated its duty to meet at reasonable times. *88 Transit Lines Inc.*, 300 N.L.R.B. 177 (1990), involved an allegation that the employer was engaged in surface bargaining and the inquiry there was with respect to the parties' intent, not as to whether the employer had satisfied a duty to meet at reasonable times. *Wallace Theaters*, 333 N.L.R.B. 410 (2001), involved a claim similar to the one the Union presses here, but is distinguishable on its facts. In *Wallace Theaters* there was ample evidence that the employer's representative responded promptly to the union's request for meetings and made himself available to the best of his ability. Where he canceled meetings, he did so because he fell ill or because of other scheduling conflicts that were disclosed in advance. Nothing in either of these cases compels a finding that the Board erred, as a matter of law, in concluding that Lancaster violated its statutory obligation.

By contrast, the fact patterns in *Calex Corp.*, 322 N.L.R.B. 977 (1997), and *Bryant & Stratton*, 321 N.L.R.B. 1007 (1996), although not identical to the facts of this case, provide reasonable comparisons to the situation here. In particular, the Board in *Bryant & Stratton* concluded that the employer had violated its reasonable-meeting duty where it had

8

declined to meet on weekends despite repeated union requests; made itself available to meet only one day a month; limited the time available for meetings by insisting that negotiations take place in the late afternoon; refused to schedule meetings on consecutive days; and canceled meetings and refused to reschedule them. *Id.* at 1034-44. The facts there are strikingly similar to the facts in this case. The ALJ did not err in relying on these cases as authority for her ruling.

For the reasons set forth above, we will DENY the Petition for Review and GRANT the Petition for Enforcement of the Decision and Order of the Board.