## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## COMPLAS INDUSTRIES, INC., Respondent.

### No. 81–2155.

United States Court of Appeals,
Seventh Circuit.

Submitted July 6, 1983.*

Decided Aug. 9, 1983.

---

* Petitioner has filed a statement asking this Court to enforce the Board's order without hearing oral argument. The Court notified respondent that it might file a "Statement as to Need of Oral Argument." Respondent has filed such a statement stating that it would prefer oral argument unless the Court is of the opinion that the facts and arguments are adequate-

ly presented in the briefs and the record and the court's decisional process would not significantly be aided by oral argument. On consideration thereof, the appeal is submitted on the briefs and record.

Elliott Moore, N.L.R.B., Washington, D.C., for petitioner.

William Michael Schiff, Kahn, Dees, Donovan & Kahn, Evansville, Ind., for respondent.

Before PELL, BAUER, and CUDAHY, Circuit Judges.

PER CURIAM.

We are called upon to address whether: the National Labor Relations Board (the Board) exceeded the scope of its authority in amending a complaint in the course of an administrative hearing; the notice provided respondent of the amended unfair labor practice claim comports with procedural due process; the particular questioning of an employee constitutes an illegal interrogation.

I

On August 23, 1979, Michael Dunsworth filed an unfair labor practice charge against respondent alleging that he was fired for trying to organize a union. Dunsworth also stated in the charge that: "I think Greg Doran was the one who told them I was talking to everyone about a union." On October 18, 1979, the Board issued a complaint alleging that respondent's discharge of Dunsworth violated sections 8(a)(1) and (3) of the National Labor Relations Act (the Act). A copy of the charge and the complaint was mailed to respondent. On April 4, 1980, a one-day hearing was held before an Administrative Law Judge (ALJ). James Stuart, a vice president of respondent, was called to testify at the hearing. The Board's General Counsel asked Stuart whether he had a conversation with Doran after the charge was filed. Despite respondent's objection the question was allowed on the ground that it might be relevant in showing the motive for firing Dunsworth. Stuart replied that he asked Doran about his opinion of Dunsworth's job performance, and "if there was union activity going on." According to Stuart, Doran replied that Dunsworth was not a good worker, and that he had never discussed union activity with Dunsworth. The General Counsel further asked Stuart whether he gave Doran a "warning" indicating that he did not have to talk to him about Dunsworth's charge. Respondent objected to the question on the ground that "[t]here's no charge of any kind of interrogation, or anything like that involved in this case," and that "this after the fact couldn't have anything to do with ... this discharge of Dunsworth's." The ALJ responded that he was "inclined to agree ... [since] [t]here's no allegation with respect to this other employee." The ALJ then asked the General Counsel whether he was "going to allege that unlawful interrogation." The General Counsel responded: "It depends on his testimony." The ALJ permitted the question, overruling another of respondent's objections. Stuart responded that he did not give Doran any warnings, "because [Doran] doesn't have to talk to [him] anytime he ... doesn't want to." Stuart was then asked if he had any subsequent conversation with Doran about the charge. Stuart replied that he subsequently spoke to Doran only about Dunsworth's job performance. Stuart also stated that his inquiries, subsequent to the filing of the complaint, did not indicate that Dunsworth ever "really push[ed]" to organize a union. At the beginning of the hearing's afternoon session, following the conclusion of Stuart's entire testimony, the General Counsel moved to amend the Board's complaint to allege "that the Respondent on or about August 24, 1979, by a supervisor and agent, James Stuart, inter-

rogated its employees about their union activities in violation of 8(a)(1) of the Act." Petitioner repeatedly objected to the amendment, claiming "lack of fair notice," and that the General Counsel's conduct was "unconscionable" in light of the fact that the Board "had an opportunity to investigate their case beforehand." The ALJ permitted the amendment.

On February 3, 1981, the ALJ issued a decision recommending that the complaint be dismissed in its entirety. The ALJ held that "the General Counsel has failed to prove an essential element of his *prima facie* case i.e. that Respondent had knowledge on or before July 12 that Dunsworth or, indeed, any of its employees was engaged in union and protected concerted activity." The ALJ found that "Dunsworth was not a good employee, ... and this was a reason, if not the most important reason, why he enlisted the aid of a union." The ALJ further held that respondent did not violate section 8(a)(1) of the Act by Stuart's interrogation of Doran following receipt of Dunsworth's charge.

The Board affirmed the ALJ's dismissal of the claim relating to Dunsworth's firing, but reversed as to the claim of an unlawful interrogation. The Board concluded that the "interrogation was coercive and that the standards of Johnnie's Poultry [are applicable]." The Board held that: "By coercively interrogating employee Doran, Respondent engaged in unfair labor practices within the meaning of Section 8(a)(1) of the Act." The Board issued a cease and desist

order and required the customary affirmative actions.

## II

"The Board was created not to adjudicate private controversies but to advance the public interest in eliminating obstructions to interstate commerce." *NLRB v. Fant Milling Co.,* 360 U.S. 301, 307–08, 79 S.Ct. 1179, 1183, 3 L.Ed.2d 1243 (1959). Only the Board is responsible for conducting a full inquiry and framing the issues. *Id.* at 307, 79 S.Ct. at 1183. However, the Board has no authority to investigate alleged unfair labor practices on its own initiative. 29 U.S.C. § 160(b); *National Licorice Co. v. NLRB,* 309 U.S. 350, 60 S.Ct. 569, 84 L.Ed. 799 (1940). The Board's investigatory machinery may only be initiated by a filing of a charge. The Board may decline to issue a complaint if it believes the charges are not susceptible of proof.

Petitioner contends that the "midtrial" amendment of the complaint was time-barred by section 10(b) of the Act, 29 U.S.C. § 160(b).[1] We disagree. The six-month limitation applies only to the filing and service of a charge, and not to the issuance or amending of a complaint.[2] *Procter & Gamble Manufacturing Co. v. NLRB,* 658 F.2d 968, 985 (4th Cir.1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 175, 74 L.Ed.2d 144 (1982); *NLRB v. Dinion Coil Co.,* 201 F.2d 484 (2d Cir.1952). A complaint may be amended at any time prior to issuance of the Board's order, 29 U.S.C. § 160(b), so long as the charge was filed

1. 29 U.S.C. § 160(b) provides in pertinent part: Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board ... shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect, and containing a notice of hearing ... not less than five days after the serving of said complaint: *Provided,* That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made .... Any such complaint may be amended ... at any time prior to the issuance of an order based thereon....

The purpose of the six-month limitation is to "prevent persons from being brought to book on stale charges and to promote industrial stability by allowing parties after the time prescribed as reasonable to assess with certainty their liability for past conduct." *NLRB v. Auto Warehousers, Inc.,* 571 F.2d 860, 863 (5th Cir. 1978).

2. The six-month "limitation extinguishes liability for unfair labor practices committed more than six months prior to the filing of the charge. It does not relate to conduct subsequent to the filing of the charge." *NLRB v. Fant Milling Co.,* 360 U.S. at 309 n. 9, 79 S.Ct. at 1184 n. 9.

and served within six months of the alleged unfair labor practice. *NLRB v. Dinion Coil Co.,* 201 F.2d at 491. A complaint or an amended complaint, although filed and served after six months, may allege violations not alleged in the charge if they did not occur more than six months prior to the filing and service of the charge, and they are closely related to the violations which are contained in the charge.[3] *Indiana Metal Products Corp. v. NLRB,* 202 F.2d 613, 619 (7th Cir.1953).

■ We believe that the Board was acting within the scope of its authority in amending the complaint to include the allegation of unlawful interrogations, since that unfair labor practice is related to the claim of illegal discharge of an employee which was "alleged in the charge"; and furthermore the amended allegation grew out of the original allegation "while the proceeding [was] pending before the Board." *NLRB v. Fant Milling Co.,* 360 U.S. at 307, 79 S.Ct. at 1183; *Nazareth Regional High School v. NLRB,* 549 F.2d 873, 882–83 (2d Cir.1977). The Board's close scrutiny of Dunsworth's charge might have included an inquiry into whether the employer had engaged in interrogation of employees in order to identify employees involved in union activities since employer identification of union supporters would be a necessary step for discriminatory treatment of selected employees. Additionally, a proper Board investigation of the employer's motivation in discharging Dunsworth might have involved an inquiry into whether the employer had interrogated or threatened employees because of their union activities. In summation: the specific claim in the charge and the claim in the amended complaint were closely related in time; most importantly, the alleged interrogation would never have occurred but for the original charge, *Texas Industries, Inc. v. NLRB,* 336 F.2d 128, 132 (5th Cir.1964); furthermore the evidence used as a basis for the amended complaint would have been gathered during a proper investigation of the charge. *NLRB v. Rex Disposables,* 494 F.2d 588, 591 & n. 1 (5th Cir.1974); *Douds v. International Longshoremen's Association,* 241 F.2d 278, 284 (2d Cir.1957). Thus we conclude that inclusion of the claim of an illegal interrogation was not beyond the scope of the Board's authority, and that a filing of a new charge was not required to support the additional claim contained in the amended complaint. *See NLRB v. International Union of Operating Engineers,* 460 F.2d 589, 601 (5th Cir.1972).

### III

We now examine whether the manner in which the Board exercised its authority comports with respondent's procedural due process right to meaningful notice and a fair and full opportunity to meet the amended claim.

■ Adjudication depends upon adverse parties to gather and present relevant evidence, and to challenge the evidence introduced by the other party. Thus, adequacy of notice is an essential prerequisite to fair and effective adjudication. Due process requires that before the government can take enforcement action against persons charged with unlawful conduct, it must inform such persons of the basis of the complaint and give them a meaningful opportunity to meet the complaint. *NLRB v. Mackay Radio & Telegraph Co.,* 304 U.S. 333, 350, 58 S.Ct. 904, 912, 82 L.Ed. 1381 (1938); *Soule Glass & Glazing Co. v. NLRB,* 652 F.2d 1055, 1073 (1st Cir.1981); *Administrative Procedure Act,* 5 U.S.C. § 554(b)(3) ("Persons entitled to notice of an agency hearing shall be timely informed of . . . the matters of fact and law asserted."). The Board's complaint, which may be liberally amended, is designed to give adverse parties notice of the exact nature of the charges so that they may prepare their case, and sets the standard of relevance at the hearing before the

---

**3.** The Board does not have carte blanche authority to expand the charge as it might please, or to ignore the charge altogether. *NLRB v. Fant Milling Co.* at 309, 79 S.Ct. at 1184. Once the Board initiates a legal proceeding on the basis of a formal charge "it may allege whatever it finds to be a part of [the] controversy, [so long as it does not get] so completely outside of the situation which gave rise to the charge that it may be said to be initiating the proceeding on its own motion, [for] then the complaint [would] fall as not supported by the charge." *NLRB v. Kohler Co.,* 220 F.2d 3, 7 (7th Cir. 1955).

ALJ. *Soule Glass & Glazing Co. v. NLRB,* 652 F.2d at 1074; *NLRB v. International Union of Operating Engineers,* 460 F.2d at 596.

When a party is not given meaningful notice of a claim by way of the pleadings, the Board may nevertheless decide that claim if it was fully litigated. The requirement of a full litigation however does not merely entail that the particular unfair labor practice be referred to in the record of the administrative hearing. Full litigation is one way of satisfying the fairness of the means of appraisal of the claimed unfair labor practice. Whether fair notice is given by way of pleading, or by way of the course of the proceeding of a full litigation, the crucial focus at all times is on whether notice was given which provided the party with an adequate opportunity to prepare and present its evidence. *Soule Glass & Glazing Co. v. NLRB, supra; NLRB v. International Union of Operating Engineers, supra; NLRB v. Duncan Foundry & Machine Works, Inc.,* 435 F.2d 612 (7th Cir. 1970); *NLRB v. Johnson,* 322 F.2d 216 (6th Cir.1963), *cert. denied,* 376 U.S. 951, 84 S.Ct. 968, 11 L.Ed.2d 971 (1964).

The original complaint in this case merely asserted an unfair labor practice pertaining to the firing of a single employee. The amending of the complaint in the course of the one-day administrative hearing to include the unlawful interrogation claim did not involve a minor variation from the claim in the original complaint for which respondent prepared a defense. The allegation of the unlawful interrogation of a particular employee is quite a different offense from the alleged unfair labor practice of an unlawful firing of another employee, requiring different elements of proof as to the factual and legal issues entailed. *Cf. Free-Flow Packaging Corp. v. NLRB,* 566 F.2d 1124 (9th Cir.1978). "[I]t is well settled that an agency may not change theories in midstream without giving respondents reasonable notice of the change." *Rodale Press, Inc. v. FTC,* 407 F.2d 1252, 1256 (D.C.Cir.1968); *Sterling Drug, Inc. v. Weinberger,* 503 F.2d 675 (2d Cir.1974). Due process is concerned with both the appearance and reality of fairness. *See, e.g.,*

*Cinderella Career & Finishing Schools, Inc. v. FTC,* 425 F.2d 583 (D.C.Cir.1970). Due process is not satisfied by giving respondent a mere opportunity to question witnesses without a prior opportunity to prepare a meaningful defense. We do not believe that the amended claim was fairly tried since the company was not given a meaningful opportunity to preserve relevant evidence, prepare for, and present a meaningful defense to the unlawful interrogation claim. *See NLRB v. Pepsi-Cola Bottling Co.,* 613 F.2d 267, 273–75 (10th Cir.1980); *Drug Package, Inc. v. NLRB,* 570 F.2d 1340 (8th Cir.1978) (had the company been given adequate notice of the possibility of a different unfair labor practice claim it might have litigated the matter differently); "The evil ... is not remedied by observing that the outcome would perhaps or even likely have been the same. It is the *opportunity* to present argument under the new theory of violation, which must be supplied." *Rodale Press, Inc. v. FTC,* 407 F.2d at 1257 (emphasis in the original). In allowing the midstream amendment to the complaint, despite respondent's repeated objections, without adjournment of the proceeding, respondent was denied freedom from surprise and an ample opportunity to defend the additional claim. *Compare NLRB v. Dinion Coil Co.,* 201 F.2d at 491.

We hold that under circumstances present in this case respondent was not provided with notice comporting with due process where the original complaint did not give any indication of the unlawful interrogation claim; that claim was made in an amended complaint during the course of a one-day administrative proceeding; respondent repeatedly objected to permitting the amending of the complaint; and an adjournment of the proceeding to provide respondent with a meaningful opportunity to meet the amended claim was not provided. *Compare Clear Pine Mouldings, Inc. v. NLRB,* 632 F.2d 721, 728 (9th Cir.1980), *cert. denied,* 451 U.S. 984, 101 S.Ct. 2317, 68 L.Ed.2d 841 (1981) (ALJ adjourned the hearings for six weeks to enable the company to meet the new allegation; the company had an opportunity to prepare its defense, and the issue was fully litigated).

## IV

If the conversation between respondent's vice-president and the employee does not constitute an unfair labor practice even without presentation of respondent's evidence, then it becomes unnecessary for us to remand for the purpose of providing the respondent with an opportunity to offer a valid explanation of its actions. Consequently to avoid the necessity of remand and subsequent delay, *see NLRB v. Majestic Weaving Co.,* 355 F.2d 854, 862 (2d Cir. 1966); *NLRB v. Bradley Washfountain Co.,* 192 F.2d 144 (7th Cir.1951), we will examine the Board's conclusion that respondent's action constituted an unlawful interrogation.

The Board predicated its conclusion that respondent "coercively interrogat[ed]" employee Doran about union activity on its finding "that the questioning was neither isolated nor innocuous, [since] Stuart concededly spoke to Doran on more than one occasion about the subject of the charge." An examination of the record, however, shows that the Board's finding is clearly erroneous. Stuart indicated that he only had a single conversation with Doran relating to union activity and that his subsequent conversation with Doran related only to Dunsworth's work performance.[4] *Record at* 85.

 Interrogation of employees is not a *per se* violation of the Act. *Sioux Products, Inc. v. NLRB,* 684 F.2d 1251, 1256 (7th Cir.1982). "Once a conversation is labelled 'interrogation,' it is quite easy—indeed, appealing—to find a section 8(a)(1) violation. But the label 'interrogation' must be used with some restraint." *Id.* at 1256 n. 7. "To fall within the ambit of § 8(a)(1), either the words themselves or the context in which they are used must suggest an element of coercion or interference." *Midwest Stock Exchange, Inc. v. NLRB,* 635 F.2d 1255, 1267 (7th Cir.1980). In this case we find little evidence suggesting the kind of coercive interrogation that is proscribed by the

Act. Stuart's conversation did not reasonably have the tendency "to interfere with, restrain, or coerce employees in the exercise of rights guaranteed in section 7 [of the Act]." 29 U.S.C. § 158(a)(1). No threats were made; the questioning was brief and limited; it is not claimed that any other employees overheard the conversation; and no employee even asserted that Stuart's question coerced or restrained any of them from exercising their rights. *Sioux Products, Inc. v. NLRB,* 684 F.2d at 1256–57. Neither the questioner's identity, nor the nature of the information sought, nor the method of questioning, nor the particular employee-employer relationship involved indicate that any employee tended to be coerced by Stuart's question. *Id.* at 1256.

The Board has not presented substantial evidence to refute respondent's claim that the conversation at issue was limited to the purpose of preparing its defense to the claim that it unlawfully fired Dunsworth. An examination of the record makes it reasonable to believe that respondent was gathering evidence to show not only that it did not know of any union activity when it fired Dunsworth, but that in fact there was no union organizing activity going on, *i.e.,* the allegation was fabricated. *See W.W. Grainger, Inc. v. NLRB,* 677 F.2d 557, 559 (7th Cir.1982) (employer has every right to interview employees in preparation for a hearing, so long as he does not discourage the employees from testifying freely at the hearing and does not discourage union activities).

Another basis for the Board's finding of an unlawful interrogation was its conclusion that respondent ignored the safeguards set forth in *Johnnie's Poultry Co.,* 146 N.L.R.B. 770 (1964). We have refused to defer to the Board's attempts to require employers to give the *Johnnie's Poultry* warnings regardless of context. *W.W. Grainger, Inc. v. NLRB,* 677 F.2d at 560. Absence of warnings is significant only when the Board can show, not merely an employer's questioning of an employee, but also a context of coercive conduct. "The failure to give

---

4. The only evidence in the record relating to the claimed unlawful interrogation was Stuart's testimony. The record of Doran's testimony reveals that he was not asked about his conversation with Stuart.

the warnings could not have been coercive in the circumstances of this case, and cannot make up for the absence of other substantial evidence of interference with protected rights." *Id.* Simply put, the non-coercive interrogation under the non-coercive circumstances was not unlawful.

### V

We hold that while the Board did not exceed the scope of its authority in amending the complaint, it violated respondent's procedural due process rights by not providing it with adequate notice. We find no valid reason to remand, since, even without full presentation of respondent's evidence, the record does not show the existence of an unlawful interrogation. Accordingly, the Board's petition for enforcement of its order is denied.