**The HENRY BIERCE COMPANY,**
Petitioner/Cross–Respondent,

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent/Cross–Petitioner.**

Nos. 92–5756, 92–5864.

United States Court of Appeals,
Sixth Circuit.

Argued May 6, 1993.

Decided May 17, 1994.

Keith L. Pryatel (argued and briefed), Millisor & Nobil, Cleveland, OH, for the Henry Bierce Co.

Aileen A. Armstrong, Deputy Associate Gen. Counsel, Richard A. Cohen (argued and briefed), Collis Suzanne Stocking (briefed), N.L.R.B., Office of the Gen. Counsel, Washington, DC, and Frederick Calatrello, Director and Paul C. Lund, N.L.R.B., Region 8, Cleveland, OH, for N.L.R.B.

Before: MARTIN and BOGGS, Circuit Judges; and KRUPANSKY, Senior Circuit Judge.

BOYCE F. MARTIN, JR., Circuit Judge.

The Henry Bierce Company requests review of a National Labor Relations Board decision finding that the company violated Sections 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) and (5), by conducting an unlawful poll and dealing directly with an employee.

The company maintains that it did not receive sufficient notice that the poll would be attacked as an unfair labor practice, and challenges the propriety of the Board's bargaining order. The Board cross-petitions for enforcement. The record reflects that the company did not have sufficient notice of the charge that its poll was substantively invalid for lack of justification. This due process violation, however, does not extend to the charge that the company's poll was procedurally invalid because of a lack of advance notice to the employees' union. Because of this lack of notice to the union, we conclude that the company's poll constitutes an unfair labor practice and may not serve as the basis for the company's withdrawal of union recognition and subsequent direct dealing. However, because the company did not have an adequate opportunity to adduce evidence in support of its alternative, "good-faith," defense to the direct dealing allegation, and because the Board failed to comply with the requirements for imposition of a bargaining order, we decline to enforce the Board's order.

## I. Historical Background

The Henry Bierce Company operates a small hardware store in Akron, Ohio. From 1974 to 1984, the company participated in a local multi-employer collective bargaining agreement with Local 348 of the Teamsters, Chauffeurs, Warehousemen, and Helpers, AFL–CIO. In 1984, the company decided to bargain directly with the union and signed a collective bargaining agreement covering the

period from May 1, 1984, to April 30, 1987. In mid-April of 1987, the company and the union negotiated a new collective bargaining agreement to run through 1990. The union representative delivered a typed draft of the agreement to David Bierce, the company's general manager, late in the summer of 1988. Upon reviewing this draft, Bierce felt that several of the previously agreed-upon provisions had not been incorporated, and that other provisions were included that had not been agreed upon.

In late September or early October of 1988, Bierce heard one of his employees say to another employee that if they wanted to "ruin a good thing," they could join a union. In addition, from 1984 to 1988 there had been a high turnover rate among the company's employees, and many of the new employees did not "check off" union dues contributions when they began work. No grievances were filed against the company during this period, and the union failed to appoint a new shop steward after the steward voluntarily retired in 1987. In light of these facts, the company consulted a labor attorney and decided to conduct a poll of the employees in order to determine whether the union still possessed majority support.

Later in 1988, union representative Robert DeStefano and union attorneys met with company attorneys to discuss the draft agreement. At this meeting, the attorney for the company apparently told DeStefano that the company intended to conduct an employee poll for the purpose of determining the remaining union support. The company ultimately conducted the poll on a Friday at 5:00 p.m. during the first week of November 1988. Because Wednesday was the employees' regularly scheduled payday, the company decided that polling the employees on a Friday at quitting time would provide the most non-coercive environment possible. David Bierce described the purpose of the poll in a prepared speech, consisting of language approved by this Court in *Thomas Industries, Inc. v. NLRB*, 687 F.2d 863, 869 (6th Cir.1982), and the employees voted by secret ballot. No union representative was present at any time during this procedure. The ballots, as counted by a non-managerial company employee, showed six votes against and one vote in favor of union representation.

On November 9, the company notified the union that it was withdrawing recognition. On December 19, the union filed a complaint with the National Labor Relations Board alleging that the company engaged in an unfair labor practice by refusing to sign the collective bargaining agreement. In March 1989, a representative of the company spoke with one employee, Charles Morgan, regarding new benefit arrangements and a transfer of his pension. The Board subsequently issued a consolidated complaint charging the company with failure to execute the collective bargaining agreement and an additional charge of direct dealing with an employee, in violation of Sections 8(a)(1) and (5) of the National Labor Relations Act.

A hearing was held in early 1990 on these charges. On the second day of the hearing, just before he rested his case, the General Counsel moved to amend the complaint to include a charge that the company's poll constituted an unfair labor practice. The company objected, but did not request a continuance. The administrative law judge proceeded with the hearing after stating that he would take the company's objection under advisement.

The decision issued on February 6, 1991. The findings were that the company had not violated the Act by failing to execute the draft agreement, because the draft submitted by the union contained provisions materially inconsistent with those previously agreed upon. The decision also stated that the company had sufficient notice that its poll would be the basis for the amended charges against it, because questions about the poll were intertwined with the initial charge and the company placed the poll into evidence before the complaint was amended. Finally, it was determined that the company's poll constituted an unfair labor practice because: (1) prior to conducting the poll, the company did not have a reasonable, good-faith belief based on objective evidence that there was a loss of employee support for the union; and (2) the company failed to provide the union with advance notice of the poll. As the company's withdrawal of recognition and direct dealing

with an employee thus violated Sections 8(a)(1) and (5) of the Act, a cease and desist order and a bargaining order were issued. The Board affirmed.

## II. The Poll and Due Process

### A. Substantive Validity: Notice to the Company

█ The company first contends that its due process rights were violated when the General Counsel was allowed to amend the complaint at the hearing, because there was insufficient notice that the poll itself would be attacked as an unfair labor practice. As we have recognized, "[t]he fundamental elements of procedural due process are notice and an opportunity to be heard." *Yellow Freight System, Inc. v. Martin,* 954 F.2d 353, 357 (6th Cir.1992) (citing *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950)). Additionally, under the Administrative Procedure Act, "[p]ersons entitled to notice of an agency hearing shall be timely informed of ... the matters of fact and law asserted." 5 U.S.C. § 554(b)(3). If notice of a claim is not given in a timely fashion, an agency may nevertheless decide the claim if it is fully and fairly litigated by express or implied consent of the parties. *Yellow Freight,* 954 F.2d at 358; *NLRB v. Complas Industries, Inc.,* 714 F.2d 729, 734 (7th Cir. 1983).

█ In determining whether the company had adequate notice of the charge that its poll was substantively invalid, and as a result constituted an unfair labor practice, we have examined the record prior to the final amendment of the charges. The consolidated complaint at the beginning of the hearing alleged that the company failed to execute a collective bargaining agreement and dealt directly with an employee. These charges involve different elements of proof, and are clearly distinct from the charge that the company's poll constituted an unfair labor practice. Thus, the nature of the charges in the consolidated complaint did not provide notice to the company that the validity of its poll was also at issue. *See, e.g., Yellow Freight,* 954 F.2d at 357 (distinct nature of amended charge and prior charges, although related,

precludes finding of notice to defending party that amended charge was being litigated); *NLRB v. Homemaker Shops, Inc.,* 724 F.2d 535, 542–44 (6th Cir.1984) (reaching the same conclusion, where charges at issue differed only in degree, and amended charge was more onerous than original charge).

█ The decision noted that the company raised the issue of the poll's substantive validity in a "position statement" it filed in response to the Board's consolidated complaint. In this statement, the company asserted that one of its two defenses to the direct dealing charge was objective evidence of an actual loss of majority support for the union, based on the results of a valid, noncoercive poll conducted in accordance with the requirements of *Thomas Industries,* 687 F.2d at 863, and *Struksnes Construction Co.,* 165 NLRB 1062 (1967). Based on this representation, it appears at first blush that the company realized the substantive validity of its poll was a contested issue before the final amendment to the charges. The litigation tactics employed by the union and the General Counsel, however, support the opposite conclusion.

The union representative, Robert DeStefano, testified during the administrative hearing that, although he had been aware of the poll's existence for more than a year, and the poll results had been interposed four months before the hearing as a defense to the direct dealing allegation, he did not file a charge alleging that the poll was an unfair labor practice. The General Counsel was also necessarily aware of the poll's existence, due to the company's reliance on its results in defending against the direct dealing allegation. Contrary to its holding here, the Board in *New York Post Corp. v. Newspaper Guild of New York,* 283 NLRB 430, 1987 WL 89559 (1987), found under similar circumstances that the General Counsel's proposed amendment of the charge on the last day of an administrative hearing was improper. The Board noted that the General Counsel in that case knew of the basis for the amendment well before the hearing, but did not offer an explanation as to why he waited until the last minute before amending the charges, and

that the defending party might have been misled with respect to the evidence required for its defense. Here, as the poll's validity was uncontested by the General Counsel in the consolidated complaint, the company reasonably believed that it only needed to establish that the poll had been unfavorable to the union and had occurred before the withdrawal of recognition and direct dealing. The company was not faced with the necessity of defending its justification for conducting the poll until the complaint was amended at the hearing. We believe, therefore, that the company was not on notice that this latter issue was to be litigated. Having found that the company had no formal notice, we now look to whether the issue was raised by consent.

### B. Substantive Validity: Consent and Opportunity to Litigate

Although "a party is not given meaningful notice of a claim by way of the pleadings, the Board may nevertheless decide the claim if it was fully litigated." *Complas Industries,* 714 F.2d at 734; *see also Yellow Freight,* 954 F.2d at 358. We first determine whether the company expressly or impliedly consented to litigate the poll's substantive validity before its objection to the additional charge and the subsequent amendment occurred. *See Yellow Freight,* 954 F.2d at 358 (agency may not base its decision on an issue that the parties tried inadvertently before a post-hearing amendment to the charges). Finally, if there was no implied consent, we must determine whether the company had a full and fair opportunity to litigate the claim after the objection was overruled. *Id.*

As a basis for his conclusion that the company consented to litigate the substantive validity of the poll, the administrative law judge stated that the company had introduced evidence pertaining to the poll during the General Counsel's presentation. The transcript of the hearing, however, establishes that this evidence was not introduced to show that the poll was justified, a showing necessary for the defense of the poll's substantive validity. Instead, questions by Bierce's counsel regarding the poll dealt with its type and timing, the only facts that the

company needed to establish given its reasonable understanding of the direct dealing allegation in the consolidated complaint.

■ As company counsel's objection and the nature of the testimony regarding the poll make clear, the company did not expressly consent to litigate the issue of the poll's substantive validity. Only after the administrative law judge overruled the objection did the General Counsel and the company introduce evidence with the purpose of determining the poll's substantive validity. The General Counsel then moved to amend the complaint, alleging the poll was an unfair labor practice. No evidence was introduced to challenge the poll's validity before company counsel's objection. There was thus no express or implied consent to litigate the poll's validity. Although the company's pre-objection questions regarding the timing and type of poll conducted may be tangentially relevant to the question of whether the poll was substantively valid, this does not establish that the company impliedly consented to litigate the matter. As we stated in *Yellow Freight,* 954 F.2d at 358 (internal citations omitted):

> Implied consent is not established merely because one party introduced evidence relevant to an unpleaded issue and the opposing party failed to object to its introduction. It must appear that the parties understood the evidence to be aimed at the unpleaded issue. Also, evidence introduced at a hearing that is relevant to a pleaded issue as well as an unpleaded issue cannot serve to give the opposing party fair notice that the new, unpleaded issue is entering the case.

The parties at the hearing did not understand the evidence tendered regarding the poll, before the company's objection, to be directed at the unpleaded issue of whether the poll was validly conducted. Thus, the company did not impliedly consent to litigate the issue of the poll's substantive validity.

■ We now turn to the question of whether the company had a full and fair opportunity to litigate the substantive validity of its poll, notwithstanding this lack of consent. The amendment to the charges occurred on the second and final day of the

administrative hearing, after the General Counsel had already completed the presentation of his case.[1] If the company had received adequate notice of the charge relating to the polling of the employees, it could have called additional witnesses and presented additional evidence in defense of that charge. Given this argument, it is hard to conclude that the company suffered no prejudice and had a full and fair opportunity to litigate the question of whether its poll was substantively valid.

## C. Procedural Validity

■ The administrative law judge found that the company's poll was substantively invalid because the company lacked a reasonable, good-faith justification for conducting the poll, and that it was procedurally invalid because the company failed to give advance notice to the union. The Board, in its opinion, stated that it did not need to rely on the procedural invalidity argument but agreed that it constituted an independent ground for finding the poll to be an unfair labor practice. As shown above, the company did not have an adequate opportunity to defend itself on the issue of the validity of its poll. The inescapable conclusion, however, is that the prejudicial effects of this due process violation extend only to the company's ability to defend the charge that the poll was substantively invalid, and not to its ability to defend the charge that the poll was procedurally invalid due to the lack of notice to the union.

■ The company acknowledges that it did not give the union advance notice of the time or place of the poll. In light of this fact, notice to the company of the charge that its poll was procedurally invalid, and a further opportunity to litigate that issue, does not aid the company if the lack of notice to the union, standing alone, is a sufficient ground to find that the poll constituted an unfair labor practice. In *Thomas Industries*, 687 F.2d at 869, this Court, in finding that a poll satisfied the procedural requirements set forth in *Struksnes*, relied in part on the fact that the union president was present, and spoke to employees before they voted.[2] In a case where neither of these two factors was present, the Fifth Circuit held that a poll conducted without advance notice to the union constitutes an unfair labor practice. *Texas Petrochemicals Corp. v. NLRB*, 923 F.2d 398, 403 (5th Cir.1991). We agree with the Fifth Circuit, and make clear today what was implicit in *Thomas Industries:* an employer must give advance notice to the union of the time and place of a prospective poll for that poll to be procedurally valid. If the employer fails to give notice, the poll constitutes an unfair labor practice. We believe that this procedural safeguard is required in order to minimize a poll's potential for disrupting the bargaining process, and to eliminate the possibility that "in a *blitzkrieg* effort an employer could rid itself of a low profile, majority union." *Texas Petrochemicals,* 923 F.2d at

---

1. The company asserts that the Board lacked the power to amend its complaint because the pre- and post-amendment charges were not "closely related" under *Texas World Service Co. v. NLRB,* 928 F.2d 1426, 1436 (5th Cir.1991). However, as this Court has previously stated, the Board has "broad authority to amend a complaint at any time prior to issuance of the Board's order, so long as the alleged violation occurred within the six-month period preceding the filing of the original charge." *Homemaker Shops,* 724 F.2d at 548 (citing 29 U.S.C. § 160(b) and *Complas Industries,* 714 F.2d at 732–33). The company does not dispute that the poll and the events surrounding it occurred less than six months before the filing of the original complaint. In addition, the final amendment concerned the same factual situation as the original charges, and is related to (although distinct from) those charges, as evidenced by the company's submission of the poll results as a defense. *See Homemaker Shops,* 724

F.2d at 548 (discussing these factors as relevant to analysis of Board's power to amend a complaint); *Complas Industries,* 714 F.2d at 733 (same proposition). Thus, the Board had the power to amend its complaint at the hearing. This result does not affect our due process analysis because "[i]t is the *manner* in which the Board exercised its authority that we question in this case." *Homemaker Shops,* 724 F.2d at 548.

2. As explained by this Court in *Thomas Industries,* 687 F.2d at 869, the requirements of *Struksnes* are that:

(1) the purpose of the poll is to determine whether the union enjoys majority support; (2) the purpose is communicated to the employees; (3) assurances against reprisals are given; (4) the employees are polled by secret ballot; and (5) the employer has not engaged in unfair labor practices or otherwise created a coercive atmosphere.

403. In the present case, the company did not give advance "time and place" notice to the union, and its poll therefore constituted an unfair labor practice.

 The company maintains that notice to the union was not a necessary element of the disposition in *Thomas Industries,* that notice is not required under *Struksnes,* and that the Fifth Circuit's adoption of the notice requirement occurred in 1991, well after the company conducted its poll. Thus, the company contends, the "new rule" requiring notice cannot apply to its decision to conduct a poll in 1988. We disagree. This Court unequivocally recognized in *Thomas Industries* that notice to the union was a factor in analyzing the procedural validity of a poll:

> We find that the [company's "captive audience"] speech primarily communicated the purpose of the poll to the employees, as required by *Struksnes. We would further note that the Union president also spoke to the employees before the voting.* We find that the polling was conducted in accordance with the *Struksnes* guidelines and was not coercive.

*Thomas Industries,* 687 F.2d at 869 (emphasis added). Additionally, the Board has embraced an advance notice requirement since 1982. *See Texas Petrochemicals,* 923 F.2d at 403 (citing *Hutchinson–Hayes International, Inc.,* 264 NLRB 1300 (1982)). Therefore, the company's poll constituted an unfair labor practice.

### III. Direct Dealing

 We now address the Board's determination that the company violated Section 8(a)(5) by dealing directly with Charles Morgan. The company raised two defenses to this charge: (1) actual evidence of a loss of majority union support, based on the poll results; and (2) its reasonable good-faith doubt, based on objective evidence apart from poll results, that the union still enjoyed majority support. Because the company did not give notice to the union of the time and place at which the poll was conducted, and the poll was therefore invalid, the company may not rely on the poll results as a defense to the direct dealing charge.

 We turn, then, to the good-faith defense. In determining that the company lacked the justification to conduct the poll, the administrative law judge found that there were insufficient objective considerations to support this second defense to the direct dealing allegation.[3] As we have stated, the company did not have an adequate opportunity to defend its justification for taking the poll. The additional evidence that the company could have introduced if it had received fair notice of the poll charge is also material to the company's second defense to the direct dealing allegation. Therefore, we conclude that the company did not have an adequate opportunity to assert its second defense.

 In reaching this conclusion, we have considered the fact that the company raised this second defense in its "position statement" to the Board, and therefore presumptively knew that this defense would be litigated. There are two factors that militate against this presumption. Initially, we note that the union's failure to challenge the poll, and the General Counsel's failure to amend the consolidated complaint before the hearing, gave rise to a reasonable belief on the company's part that the poll's validity and results were not in question. As a result, the company relied on its first defense to the direct dealing allegation—objective evidence, based on the poll, that the union had actually lost majority support. We believe that the taint of the due process violation with regard to the poll charge extended to the company's opportunity to present evidence in defense of the direct dealing allegation. *See Drug Package, Inc. v. NLRB,* 570 F.2d 1340 (8th Cir.1978) (due process violation where, had company been given adequate notice of the possibility of a different unfair labor practice claim, it might have litigated the matter dif-

---

3. This issue was not addressed in the context of the direct dealing allegation, but in determining the poll's substantive validity. In so doing, the administrative law judge improperly applied the higher direct dealing standard—objective considerations leading to a good-faith doubt of *majority* support—instead of the correct standard for determining a poll's validity that this Court approved in *Thomas Industries*—substantial, objective evidence of *a loss* of support for the union. *Thomas Industries,* 687 F.2d at 867.

ferently). Moreover, the company did not bear the burden of proof on its second defense to the direct dealing allegation, and therefore cannot have been expected to assert that defense aggressively in light of the presumed validity of its poll. *See Pulley v. NLRB*, 395 F.2d 870, 876 (6th Cir.1968) (employer's good-faith doubt as to majority status of union not in the nature of an affirmative defense on which employer has burden of proof; burden is on General Counsel to show bad faith of employer in refusing to bargain). Thus, as a direct result of the violation of the company's due process rights with respect to the poll charge, the company did not have an adequate opportunity to introduce evidence in defense of the direct dealing allegation. We therefore remand this case to the Board for a determination as to whether the company directly dealt with its employee in violation of Section 8(a)(5).

### IV. The Bargaining Order

The company contends that the Board improperly imposed a bargaining order to remedy the poll and direct dealing violations. Because we are remanding this case to the Board for further findings on the direct dealing charge, we see no reason why the bargaining order should remain in force based solely on the Section 8(a)(1) poll violation. The Board normally has broad discretion to fashion remedies in order to undo the effects of violations of the Act. *NLRB v. Vemco, Inc.*, 989 F.2d 1468, 1487 (6th Cir. 1993). A bargaining order, however, is an extraordinary remedy that we "scrutinize very closely" when imposed by the Board without a new union election. *Exchange Bank v. NLRB*, 732 F.2d 60, 63 (6th Cir. 1984). A bargaining order is appropriate only if the union previously possessed majority status and "the Board finds that the possibility of erasing the effects of past [unfair labor] practices ... by the use of traditional remedies, though present, is slight and that employee sentiment once expressed through [authorization] cards would, on balance, be better protected by a bargaining order." *Id.* at 62 (quoting *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 614, 89 S.Ct. 1918, 1940, 23 L.Ed.2d 547 (1969)). In this Circuit, we have interpreted *Gissel* to mean that "in reaching

its determination to issue a bargaining order, the Board *must* make factual findings and *must* support its conclusion that there is a *causal* connection between the unfair labor practices and the probability that no fair election could be held." *M.P.C. Plating, Inc. v. NLRB*, 912 F.2d 883 (6th Cir.1990) (citing *Indiana Cal–Pro, Inc. v. NLRB*, 863 F.2d 1292, 1300–01 (6th Cir.1988)). Here, the Board made no factual findings and did not explicitly conclude that there was a causal connection between the alleged unfair labor practices, including the poll, and the probability that no fair election could be held. Accordingly, we decline to enforce the Board's bargaining order.

### V. Conclusion

For the foregoing reasons, we affirm the Board's decision that the company's poll constituted an unfair labor practice, based on the lack of notice to the union. We decline to enforce the Board's order insofar as it directs the company to bargain with the union, and remand the case for: (1) further findings on the direct dealing allegation; and (2) imposition of an appropriate remedy.