**FPC HOLDINGS, INCORPORATED, d/b/a Fiber Products, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**FPC HOLDINGS, INCORPORATED, d/b/a Fiber Products, Respondent.**

Nos. 94–2415, 94–2513.

United States Court of Appeals, Fourth Circuit.

Argued May 3, 1995.

Decided Sept. 13, 1995.

**ARGUED:** Frank S. Astroth, Astroth, Serotte, Rockman & Wescott, Baltimore, MD, for petitioner. Vincent J. Falvo, Jr., N.L.R.B., Washington, DC, for respondent. **ON BRIEF:** Frederick L. Feinstein, General Counsel, Linda Sher, Acting Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, Paul J. Spielberg, Deputy Assistant General Counsel, N.L.R.B., Washington, DC, for respondent.

Before MICHAEL and MOTZ, Circuit Judges, and YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.

Petition for review denied and enforcement granted by published opinion. Judge MICHAEL wrote the opinion, in which Judge MOTZ and Senior Judge YOUNG joined.

## OPINION

MICHAEL, Circuit Judge:

FPC Holdings, Inc. (FPC) petitions for review of an order of the National Labor Relations Board. The Board's order found that FPC violated the National Labor Relations Act (the "Act"), 29 U.S.C. §§ 158(a)(1), (3), by reprimanding and ultimately discharging two employees for engaging in protected concerted activities. FPC raises two issues. On the first, a claim that the Board erred in

allowing the complaint against FPC to be amended, we conclude that amendment was proper because the allegations added in the General Counsel's amended complaint were closely related to the allegations in the original charges to the Board. On FPC's second issue, a claim of insubstantial evidence, we conclude that there was substantial evidence to support the Board's finding that FPC engaged in unfair labor practices proscribed by the Act. We therefore deny the petition for review and enforce the Board's order.

## I.

FPC is a Baltimore-based company that distributes paper and plastic packaging materials, janitorial products, and 7–Up products to supermarkets and fast food restaurants. The history of FPC's development began in 1953 with the formation of Fiber Products Company, Inc., which operated as an independent company until June 1990. Fiber Products distributed only packaging and janitorial products. In June 1990 Fiber Products' owners formed FPC as a holding company, and Fiber Products became its subsidiary. FPC immediately acquired Thomas Buccheri & Sons, Inc., a wholesale distributor similar to (but smaller than) Fiber Products. Later, in September 1991, FPC bought from the 7–Up Bottling Company a beverage distribution operation that was merged into the Buccheri subsidiary.

FPC began losing large sums of money in 1991. As an initial response, FPC imposed an employee wage freeze in the summer of that year. Thereafter, in the face of continuing losses, it took steps to consolidate and modernize its operations. In June 1992 the old Buccheri warehouse (on Franklintown Road) was closed and its lease cancelled. Except for a few drivers who were transferred to Fiber Products, the Buccheri employees were phased out. Buccheri customers were then served from the original Fiber Products warehouse on Strickland Street. The 7–Up operation and all sales staff were moved to a new facility on Commerce Drive. In October 1992 the Fiber Products and Buccheri subsidiaries were formally merged into FPC, with FPC as the surviving corporation.[1]

FPC employs approximately ten truck drivers at its Strickland Street warehouse. Until October 1992 this number included Dave DeCarlo and Robert Zeback. The drivers leave the warehouse to make their runs between 4:00 and 6:00 a.m. each morning, returning between 11:00 a.m. and 3:00 p.m. Any return after 4:00 p.m. is considered a "late" return, for which drivers are required to give prior notice to the warehouse. The drivers are allowed a forty-five minute lunch break during the course of their deliveries.

Gilbert Tyler, FPC's transportation supervisor, held monthly drivers' meetings at which safety rules and other topics were discussed. In the spring or early summer of 1992 the drivers began to gather by themselves prior to these company meetings and discuss informally complaints and concerns about their jobs. The 1991 wage freeze was a frequent subject of discussion. DeCarlo served as the drivers' spokesman in the ensuing meetings with management. In April 1992, following a meeting among drivers about the wage freeze, DeCarlo met with Bonnie Roe (personnel director) about a promised wage increase. Roe reassured DeCarlo that he was a "good employee," but she told him that his "attitude" was slipping.

As mentioned above, drivers were allowed a lunch break during their deliveries to be taken at their discretion. On May 26, 1992, five drivers, including DeCarlo and Zeback, met for lunch at Bob's Big Boy Restaurant. The drivers discussed labor grievances. The length of the lunchtime meeting was disputed: DeCarlo and Zeback testified that it lasted about an hour, and Roe testified that it lasted two hours. While the drivers were inside the restaurant, an FPC customer called the warehouse and reported that the drivers' trucks were parked outside Big Boy's. FPC's warehouse operations manager, Michael Taylor, drove to the restaurant and took down the numbers of the trucks, but he

---

1. Although some of the events relevant to this case occurred before the operating subsidiaries (Fiber Products and Buccheri) were merged into FPC, we hereinafter refer to all of the companies as FPC, the party named in the General Counsel's consolidated complaint.

did not go inside. DeCarlo and Zeback returned their trucks to the warehouse between 2:00 and 3:00 p.m., which was their customary time and well within FPC's 4:00 p.m. deadline.

Several days after the Big Boy meeting, Roe met with Zeback for a probationary evaluation. During the evaluation Roe told Zeback that he was a "troublemaker" and was "consorting with troublemakers." Shortly thereafter, Roe prepared a written reprimand for Zeback. The reprimand cited Zeback for taking a "2 hr. lunch" and for "[a]ttendance at a 'Dave DeCarlo meeting'" to "discuss 'pay.'" In addition, it said "R. Z. admits to being there [with] 4 other drivers. Knows this is against policy and that [it] is grounds for immediate dismissal." FPC also prepared a written reprimand for DeCarlo that accused him of "poor attitude, cooperation, meeting on company time." Prior to the Big Boy meeting DeCarlo had never received a negative evaluation.

Near the end of September 1992 a group of drivers, including DeCarlo and Zeback, met before work to discuss getting union representation. DeCarlo agreed to talk to his brother, who was a union shop steward at a paper company. The drivers agreed to meet with a union representative on October 6. The day after the September meeting, Zeback and DeCarlo invited other drivers (either in person at the warehouse or over the company CB radio) to the upcoming October 6 meeting to consider unionizing.

On October 5, after completing their runs, DeCarlo and Zeback were summoned separately into Taylor's office and told that they were being permanently laid off. In response to questions from DeCarlo and Zeback, Taylor said that their seniority did not matter and that the company was not cutting their routes, but that they "had to go." The October 6 meeting with the union representa-

tative was canceled because the other drivers were afraid of retribution. No other drivers were laid off at that time.[2]

Following the layoffs, FPC moved two backup drivers to DeCarlo's and Zeback's routes. FPC also ran advertisements in local newspapers soliciting applications for "truck driver" and "driver/warehouseman" positions and characterizing itself as an "expanding" company. The company placed written reprimands in the personnel files of Mike Comegys and Tim Taylor, two other drivers present at the Big Boy meeting, and gave raises to four other drivers.

On October 26, 1992, and November 10, 1992, respectively, DeCarlo and Zeback filed charges with the Board alleging that they had been terminated by FPC because of their union activities. On January 28, 1993, the Board's General Counsel consolidated the two cases and issued a complaint alleging violations of Sections 8(a)(1) and 8(a)(3) of the Act, 29 U.S.C. §§ 158(a)(1), (3).[3] On August 3, 1993, the first day of the hearing, the General Counsel moved to amend the complaint to add allegations that FPC violated Section 8(a)(1) of the Act by issuing reprimands in response to the meeting at Bob's Big Boy Restaurant. The ALJ granted the motion to amend and found that FPC had violated Sections 8(a)(1) and 8(a)(3) of the Act by reprimanding and terminating DeCarlo and Zeback in retaliation for engaging in protected concerted activities. The Board affirmed the ALJ's decision, and FPC now petitions for review.

## II.

### A.

■ FPC first challenges the Board's adoption of the ALJ's decision to permit the General Counsel to amend the complaint to

---

2. A third driver, Marc Hurley, who had been recovering from a nonwork related injury since July, was laid off in November 1992.

3. Section 8(a)(1) makes it an unfair labor practice "to interfere with, restrain, or coerce employees in the exercise of" their right to engage in protected activities including "the right to self-organization, to form ... labor organizations, and to engage in other concerted activities for

the purpose of collective bargaining or other mutual aid and protection." 29 U.S.C. §§ 157, 158(a)(1). Section 8(a)(3) makes it an unfair practice "by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." 29 U.S.C. § 158(a)(3).

add allegations that the reprimands following the Big Boy meeting violated Section 8(a)(1) (the "reprimand allegations"). DeCarlo and Zeback filed their original charges in October and November of 1992, alleging only that they were terminated in retaliation for their attempt to organize a union (the "discharge allegations"). The General Counsel's initial consolidated complaint alleged that DeCarlo and Zeback were discharged because of their activities in support of the union and other concerted activities, in violation of Sections 8(a)(1) and 8(a)(3).

■ Under Section 10(b) of the Act, 29 U.S.C. § 160(b), a complaint may be based only upon violations occurring within six months prior to the filing of a charge with the Board. A complaint *or an amended complaint* may include allegations not in the original charge if the violations alleged occurred within six months before the charge and are "closely related" to the allegations in the charge. *Redd–I, Inc.*, 290 NLRB 1115, 1988 WL 214320 (1988); *Reebie Storage & Moving Co. v. NLRB*, 44 F.3d 605, 608 (7th Cir.1995).[4] FPC does not contest the ALJ's finding that the reprimands of DeCarlo and Zeback occurred within six months before the original charges. Rather, it challenges the ALJ's (and the Board's) determination that the reprimand allegations were "closely related" to the discharge allegations in the original charges.

■ The Board considers three factors in determining whether complaint or amended complaint allegations are closely related to a timely charge: (1) whether the allegations involve the same legal theory as the allegations in the charge, (2) whether the allegations arise from the same factual situation or sequence of events as the allegations in the charge, and (3) whether a respondent would raise the same or similar defenses to both allegations. *Redd–I*, 290 NLRB at 1118. In this case, the Board found that the amendment satisfied each of the *Redd–I* factors.

■ In challenging the amendment, FPC first argues that the two sets of allegations do not involve the same legal theory because they arise under different sections of the Act. The discharge allegations, it claims, arise under Section 8(a)(3), whereas the added reprimand allegations arise under Section 8(a)(1). This argument fails for two reasons. First, as the amended complaint alleges, termination in retaliation for attempts to organize a union violates both Sections 8(a)(3) and 8(a)(1), *see e.g., NLRB v. Nueva Eng'g, Inc.*, 761 F.2d 961, 969 (4th Cir.1985), and accordingly both sets of allegations implicated Section 8(a)(1). Second, allegations need not arise under the same statutory section to involve similar legal theories. *Truck Drivers & Helpers Union, Local No. 170 v. NLRB*, 993 F.2d 990, 1001 (1st Cir.1993); *Nickles Bakery, Inc.*, 296 NLRB 927, 928 n.5, 1989 WL 224354 (1989); *see NLRB v. Complas Industries, Inc.*, 714 F.2d 729, 733 (7th Cir. 1983) (8(a)(3) violations and 8(a)(1) violations held closely related). Rather, it is sufficient that both sets of allegations are part of the same "effort or crusade" against concerted activity. *Truck Drivers*, 993 F.2d at 1001. That was the case here, as our discussion immediately below reveals.

■ Next, FPC argues that the two sets of allegations are not factually related because they arise out of what it claims are two separate events: the Big Boy meeting and the attempt to form a union. The Board, however, has consistently held that allegations are closely related when they are "part of an overall plan to resist organization." *Waste Management*, 308 NLRB 50, 1992 WL 186632 (1992); *see NLRB v. Overnite Transp. Co.*, 938 F.2d 815, 820–21 (7th Cir. 1991). This is true "whether or not the acts are of precisely the same kind and whether or not the charge specifically alleges the existence of an overall plan on the part of the employer." *Waste Management*, 308 NLRB at 50 n. 2. Here, the reprimands and terminations were actions taken against the same

---

4. The rule that allegations "closely related" to the charge may be added to the complaint is based on the following consideration: "because the role of the General Counsel is to vindicate public rights, the General Counsel should be permitted to amend the allegations in the charge based on information it obtains during its investigation.... Nevertheless, because the General Counsel is not vested with the authority to investigate labor practices on its own initiative," any complaint must therefore be closely related to the charge. *Reebie*, 44 F.3d at 608.

two employees by the same managers and were in response to the employees' continued attempts to take collective action against the pay freeze and on other employment concerns. We therefore agree with the Board that the two sets of allegations arise from the same factual situation or sequence of events.[5]

▮▮▮ Finally, we reject FPC's argument that the "allegations require different defenses." We conclude that FPC could be expected to raise similar defenses to the two sets of allegations. An employer may defend against an allegation of unlawful termination by showing legitimate reasons for the layoff. Therefore, DeCarlo's and Zeback's employment records, including their reprimands, could reasonably be expected to be raised in response to the discharge allegations. Likewise, FPC could be expected to rely on the same records to account for its pre-termination conduct in defending against the reprimand allegations.

In sum, the reprimand allegations were closely related to the discharge allegations in the original charges, and the ALJ did not err in allowing amendment of the consolidated complaint.

### B.

▮▮▮ FPC next challenges the ALJ's findings (adopted by the Board) that FPC's reprimands and ultimate termination of DeCarlo and Zeback violated Section 8(a)(1) and Section 8(a)(3) of the Act. We must accept the Board's findings if backed by substantial evidence. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 490–91, 71 S.Ct. 456, 466, 95

L.Ed. 456 (1951); *Nueva Eng'g,* 761 F.2d at 967.

### 1.

▮▮▮ The Board has established a formula for determining when an allegedly discriminatory discharge violates the National Labor Relations Act. First, the General Counsel must make out a prima facie case that the employer's decision to lay off an employee was motivated by anti-union animus. The burden then shifts to the employer to prove affirmatively that the same action would have been taken even in the absence of the employee's union activity. *Wright Line,* 251 NLRB 1083, 1980 WL 12312 (1980), *enforced,* 662 F.2d 899 (1st Cir.1981), *cert. denied,* 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982); *see also NLRB v. Transportation Management Corp.,* 462 U.S. 393, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983) (approving *Wright Line* formulation). To make out a prima facie case, the General Counsel must show (1) that the employee was engaged in protected activity, (2) that the employer was aware of the activity, and (3) that the activity was a substantial or motivating reason for the employer's action. *NLRB v. Daniel Constr. Co.,* 731 F.2d 191, 197 (4th Cir.1984). Motive may be demonstrated by circumstantial as well as direct evidence, *NLRB v. Low Kit Mining Co.,* 3 F.3d 720, 728 (4th Cir.1993), and is a factual issue "which the expertise of the Board is peculiarly suited to determine," *Perel v. NLRB,* 373 F.2d 736, 737 (4th Cir.1967).

### 2.

▮▮▮ With these standards in mind, we turn first to the ALJ's finding that FPC

---

**5.** The recent decisions in *Reebie Storage & Moving Co. v. NLRB,* 44 F.3d 605 (7th Cir.1995), and *Drug Plastics & Glass Co. v. NLRB,* 44 F.3d 1017 (D.C.Cir.1995), are not contrary to our decision today. The charge filed with the Board in *Reebie* alleged only that the employer *discouraged* union membership by threatening unwanted employees with discharge or discipline. The Seventh Circuit correctly held that allegations in the General Counsel's complaint that the employer *encouraged* union membership by applying a new employment agreement only to union members were allegations not closely related to the charge. However, the court reaffirmed its view that § 10(b) should be interpreted "quite deferential[ly] to the General Counsel" and that allega-

tions in a complaint are invalid only if they are "completely outside of the situation complained of in the charge." 44 F.3d at 609. The charge in *Drug Plastics* alleged only the unlawful discharge of a single employee. The General Counsel issued a complaint adding allegations of the employer's anti-union conduct directed at employees generally and only incidentally involving the employee named in the charge. The D.C. Circuit held that the new allegations were not sufficiently related factually to the original charge. 44 F.3d at 1020–21. In the present case, the additional allegations in the amended complaint involve the same two employees and are part of a single sequence of events leading to their discharge.

reprimanded DeCarlo and Zeback in retaliation for discussing labor grievances at the meeting at Bob's Big Boy Restaurant and at other meetings. Abundant evidence indicates that FPC knew that labor matters were discussed at these meetings and that this was a motivating factor behind the reprimands. At Zeback's probationary evaluation, two days after the Big Boy meeting, Roe told him he was a "troublemaker" and was "seen talking to troublemakers." Zeback's reprimand cited him for "[a]ttendance at a 'Dave DeCarlo meeting' . . . to discuss 'pay.'" It also stated that Zeback's attendance at the meeting "is against policy" and "is grounds for immediate dismissal," despite the fact that drivers were expected to take lunch breaks during the middle of the day. DeCarlo's reprimand (the only one he ever received during his tenure at FPC) cited him for "poor attitude, cooperation, meeting on company time." It also noted that "[e]employees acknowledges he is upset by no pay increase and that his attitude has changed." This evidence was sufficient to make out a prima facie case that the reprimands were motivated by the drivers' meetings to discuss the wage freeze and other complaints.

■ In response, FPC claims that the reprimands were issued because DeCarlo and Zeback took an extended lunch break on the day of the Big Boy meeting and thereby delayed the return of their trucks, which were needed to move merchandise from the Buccheri warehouse. However, evidence presented at the hearing belied this claim. Timecards verified that DeCarlo and Zeback returned their trucks between 2:00 and 3:00 that afternoon, which was their customary return time and was well before FPC's 4:00 p.m. deadline. Roe was the only witness to testify that the lunch interfered with the Buccheri move; neither Taylor (the warehouse manager) nor Tyler (the transportation supervisor) corroborated her claim. No FPC manager ever mentioned to DeCarlo and Zeback that they had tied up needed trucks, nor did such an allegation appear in their reprimands. Finally, if the trucks were urgently needed, Taylor, who drove to Big Boy's, could have gone inside and told the drivers that they should return to the warehouse. He did not do so. We conclude that

substantial evidence supports the ALJ's rejection of FPC's proffered rationale for issuing the reprimands.

### 3.

■ We next address the ALJ's finding that FPC's termination of DeCarlo and Zeback violated Section 8(a)(3) of the Act. FPC contends first that no evidence demonstrated that it even was aware that its drivers were making plans to organize a union. Knowledge of union activity "is the 'threshold question' where a violation of Section 8(a)(3) of the Act is alleged," *Goldtex, Inc. v. NLRB*, 14 F.3d 1008, 1011 (4th Cir.1994), and may be proven by circumstantial, as well as direct evidence, *Davis Supermarkets, Inc. v. NLRB*, 2 F.3d 1162, 1168 (D.C.Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1368, 128 L.Ed.2d 45 (1994); *Abbey's Transp. Servs., Inc. v. NLRB*, 837 F.2d 575, 579 (2d Cir.1988).

Sufficient circumstantial evidence existed to back the ALJ's finding that FPC knew about and was motivated by DeCarlo's and Zeback's efforts to unionize. DeCarlo and Zeback made no secret of their activities and discussed the planned union meeting openly with other drivers in the warehouse, in FPC's parking lot, and over the company's CB radio. All of these discussions took place during a time when FPC was admittedly closely monitoring DeCarlo's behavior. The timing of the layoffs (the day prior to the scheduled union meeting) and the fact that DeCarlo and Zeback were the only drivers discharged raise the inference that the layoffs were motivated by anti-union animus. *See Goldtex*, 14 F.3d at 1014 (timing of layoffs may be used as evidence of anti-union animus); *NLRB v. Rain–Ware, Inc.*, 732 F.2d 1349, 1354 (7th Cir.1984) (anti-union animus demonstrated when employees laid off the day after employer received union demand letter). Finally, the prior reprimands issued to DeCarlo and Zeback in May demonstrated that FPC was hostile to their concerted activities. This evidence was sufficient to permit the ALJ to infer anti-union motivation. *See Davis Supermarkets*, 2 F.3d at 1168; *Abbey's Transp.*, 837 F.2d at 580 (knowledge and unlawful motivation inferred

**944**

from timing of discharges, selection of two prime movers of union drive for termination, and manifestations of hostility through other Section 8(a)(1) violations).

 FPC responds that the discharges of DeCarlo and Zeback were part of an overall downsizing that had been planned since August 1992. However, substantial evidence produced at the hearing again belies FPC's purported rationale. The layoffs occurred just before the November–December holiday season, which Taylor testified was the company's busiest time of the year when drivers were often called upon to drive extra runs. Neither DeCarlo's nor Zeback's routes were cut; backup drivers were immediately promoted to take them. Other than Marc Hurley, a driver who had been inactive for several months recovering from an injury, no other drivers were laid off. In fact, FPC later ran advertisements seeking applicants for truck driver positions.

 Furthermore, other than the reprimands stemming from the Big Boy meeting, FPC produced no evidence of prior negative evaluations in the personnel file of either DeCarlo or Zeback. In fact, as to DeCarlo in particular, considerable evidence produced at the hearing showed that he was one of FPC's most skilled and valuable employees. *See Nueva Eng'g,* 761 F.2d at 968 (employer's purported reason for discharge found pretextual where employee discharged was among employer's most experienced); *Daniel Constr.,* 731 F.2d at 193–96 (same). Thus, in the context of this case, FPC's vague allegations of "bad attitude" do not provide a meaningful justification for DeCarlo's dismissal. *See Salem Leasing Corp. v. NLRB,* 774 F.2d 85, 88 (4th Cir.1985). Accordingly, we conclude that substantial evidence backed the ALJ's finding that FPC's purported rationale for the dismissals was merely a pretext.

### III.

In sum, the consolidated complaint was properly amended and substantial evidence backed the Board's finding that FPC violated Sections 8(a)(1) and 8(a)(3) of the Act. We

therefore deny the petition for review and enforce the Board's order.

*ENFORCED.*